## TALLMAN *vs.* BRESLER.

The defendant was the owner, and S. a sub-lessee, of certain premises in the city of New York. S. employed the plaintiff to make repairs upon the premises at the agreed price of $4,700, of which he paid $1,000, when the work was partly done. S. failing to pay any more money, the plaintiff refused to go on with the work; whereupon the defendant said to him that he (the defendant) had agreed to pay S. $2,000 toward the repairs and alterations, and if the plaintiff would go on and complete the work, he would pay it to him, when the work was done. The plaintiff accordingly went on and completed the alterations and repairs, and sued to recover the $2,000. *Held* that the defendant was liable, to the extent of $2,000, on his promise, made upon a valid consideration.

*Held, also,* that the promise was an original one, and in no sense collateral, or a promise to pay the debt of another; but the defendant entered into an independent obligation of his own, and his promise to pay was not contingent upon the failure of another person to pay.

That it was not an existing or prospective debt of a third party, which the defendant agreed to pay; but was a promise to pay the plaintiff $2,000, on a new and original consideration, which he supplied by the work and materials he afterward furnished.

That the defendant was himself the debtor to the plaintiff to the extent of the $2,000 which he promised to pay him.

That there was a valid consideration for the promise, in the undertaking of the plaintiff to perform, and in the subsequent performance of, the work.

That, in contemplation of law, the work performed and materials furnished by the plaintiff, upon the promise of the defendant to pay therefor, were to subserve and promote the interest of the defendant.

S. assigned to the plaintiff the lease of the premises "as collateral security for the payment of $3,700 to become due to" the assignee, "on completion of the repairs;" and on the payment of that sum, the plaintiff was to re-assign the lease to S. The defendant set up as a counter-claim against the plaintiff's demand, the rent due under the lease. *Held* that the plaintiff, having entered into possession of the premises only for the purpose of making the repairs, did not have possession as assignee of the lease, and was not a mortgagee in possession, or liable for the rent.

It is only when a mortgagee takes possession, that he has the estate *cum onere*, and becomes liable upon the covenants in the lease.

APPEAL, by the defendant, from a judgment entered upon the report of a referee, and from orders made at a Special Term.

The opinion of the court states the facts in the case.

*N. C. Ellis*, for the appellant.

I. Whatever rights the plaintiff may have against the defendant, they are such and such only as he acquired as assignee of the defendant's written contract with Sullivan. 1. This is shown by the plaintiff's own testimony. He speaks of either the verbal or written contract; the lease; the defendant's contract endorsed thereon; and the assignment of both to the plaintiff. 2. There is no evidence that this written contract between Sullivan and the defendant, which was assigned to the plaintiff, was ever extinguished. 3. This action would not bar an action by the plaintiff, as assignee of the same; and to uphold this action is to subject the defendant to a double liability, to wit, on the verbal promise, and on the written contract.

II. The defendant was not liable under written contract nor verbal promise, until the work was completed according to written plans. It was never so completed.

III. The verbal promise was without consideration, in so far as it was independent of the written contract. 1. No legal harm resulted to the plaintiff, and no legal benefit to the defendant, by reason of such promise. The plaintiff was under legal obligation to Sullivan to do the work. Sullivan was not in default. The work was to have been paid for as it progressed. This is not susceptible of exact application. It does not mean payment at the end of every hour during the day, nor at the end of every day. The plaintiff was paid $1,000. After this, he could not put Sullivan in default without completing the entire work, for there could be no standard by which to determine exactly how much he would have a right to demand. He also received $600 additional in rents. The defendant received no additional legal benefit from the promise. He was, by the contract with Sullivan, entitled to the completion of the work, which work the plaintiff himself was legally bound to perform for Sullivan. The plaintiff did no more than he was

legally required to do, excluding the verbal promise, and the defendant received no more than he had a right to call for under his written contract. 2. The plaintiff did not stop—did not absolutely abandon work; he refused to go on without more money. The condition must have been complied with, for work did go on up to date of verbal promise, although "very slowly."

IV. The alleged promise, upon which this action is based, construed as an independent promise, would be void by the statute of frauds. (*Brown* v. *Weber*, 38 *N. Y.* 187.) The facts in that case are like the facts in this. 1. Had the contract between the plaintiff and Sullivan been absolutely cancelled and extinguished by release under seal, a verbal promise by the defendant based upon such cancellation, would doubtless have been good. But such is not the case. The plaintiff recognized Sullivan and his rights throughout, under the original contract between themselves. 2. The plaintiff says the defendant told him he would "get" his money; clearly implying that the defendant's promise was not an independent promise, involving the cancellation of Sullivan's agreement with the plaintiff. 3. The work did not stop. In *Weber* v. *Brown*, (38 *N. Y.* 187,) the promise was made "to induce the plaintiff to go on and finish the mill." The plaintiff, in that case, "went on and finished the mill;" held, that the promise was within the statute.

V. Tallman is liable, as assignee of the lease, for rent during the period he was such assignee. The principle is elementary. (30 *N. Y.* 453–460.) 1. Even an equitable assignee is liable. (*Astor* v. *Lent*, 6 *Bosw.* 612.) 2. By statute he could, as assignee, enforce as against under tenants, the same remedies that could have been employed by his assignor. (*Taylor's Landlord and Tenant*, § 439. 2 *R. S. ch.* 1, *title* 4, §§ 23–24.) 3. An assignee of rent, as rent, could maintain action against under tenants, on the principle of *Van Rensselaer* v.

*Read*, (26 *N. Y.* 458.) Rent is real estate. (*Id.* 572. 1 *Hill. on Real Prop. p.* 1, ¶ 1.)

VI. If the assignment be construed as a mortgage, the plaintiff is liable as mortgagee in possession. (*Astor v. Hoyt*, 5 *Wend.* 617, 619. *Walton* v. *Cronly*, 14 *id.* 63. *In the matter of Galloway*, 21 *id.* 32. *Demainville v. Mann*, 32 *N. Y.* 197.) The following is a part of the opinion of the court in the case from 14 *Wendell*, at page 66: "But if he takes possession of the mortgaged premises he has the estate *cum onere*, and is liable as assignee upon the covenants contained in the lease." 1. The intent with which the plaintiff took the assignment, (or mortgage, if it be so construed,) is all important, and he testifies that it was the intent that he, the plaintiff, should take the rents after the assignment was executed. "In the construction of every instrument creating or conveying, or authorizing the creation or conveyance of any real estate or interest in lands, it shall be the duty of courts of justice to carry into effect the intent of the parties, so far as such intent can be collected from the whole instrument, and is consistent with the rules of law." (2 *R. S. ch.* 1, *title* 5, § 2.) 2. The taking of the rents was possession. "Rent being a mere creature of the law; the right always carries with it the possession." (1 *Hill. on Real Prop. p.* 249, 3*d ed.*) Hence, the plaintiff's right to the rent was, by operation of law, the possession of the rent itself, and renders him liable, the same as if actually received. A naked mortgagee of lease has no right to rent, for estates may be had in rent in general the same as with estates in land, viz., tenant in fee, for life or years. (*Id.* 247, § 72.) 3. "But it is perfectly well settled that when rent * * * falls due after the death of the testator or intestate, and the executor or administrator enters, or which is the same thing, as here charged, receives the rents and profits, he is chargeable directly on the covenant as an assignee." (*In the matter of Galloway*,

21 *Wend.* 33.) See, also, *Armstrong* v. *Wheeler*, (9 *Cowen*, 88,) where renting &c. was held sufficient evidence that the defendant was assignee. The case of *Demainville* v. *Mann*, (32 *N. Y.* 197,) rests upon the following principles, as is stated in the opinion of the court, at page 207 : " The ground upon which assignees are made liable is because they have enjoyed the rents and profits." In that case the assignee of two-thirds of the lease was held liable for rents, not only to the extent of his two-thirds interest, but also for the remaining one-third, which he did not own, on the ground that he enjoyed the benefit of the entire property. "But if he underlets, the occupation of the under tenant is his occupation, and he is liable as assignee of the lease." (*Taylor's Landlord and Tenant*, § 461, *and cases cited. Cited with approval, Jermain* v. *Pattison*, 46 *Barb.* 13.) 4. This intent was carried out by the plaintiff's taking rent shortly after the assignment. The amount of rent actually received by the plaintiff was $600. 5. The possession of the plaintiff to complete the contract relative to repairs and alterations, was veritable possession; although the law certainly cannot require a mortgagee to be in bodily contact with the concrete realty, to fulfill the definition of the word "possession." At best, "possession" is but a relative word. In this case, the plaintiff's legal rights, under his written assignment, and his exercise of those rights, are in every substantial particular equivalent to physical, personal possession.

VII. The clause in the assignment whereby the plaintiff takes the lease subject to the covenants therein contained, is a contract between two persons for the benefit of a third, and can be enforced by the latter. (*Lawrence* v. *Fox*, 20 *N. Y.* 268.)

VIII. The plaintiff was assignee from March 20, 1869, to March 28, 1870—one year and eight days. He is, therefore, liable for rent at the rate of $1,500, original rent;

and rent, at the rate of $300 increase, under agreement, if the contract was completed.

IX. The referee's conclusions of law, not being sustained by his finding of fact, judgment should be reversed. (*Buckingham* v. *Payne*, 36 *Barb*. 81. *Lakin* v. *N. Y. & Erie, R. R. Co.*, 11 *How. Pr.* 412. *Nelson* v. *Ingersoll*, 27 *How.* 4. *Tomlinson* v. *The Mayor &c.*, 23 *How. Pr.* 455. *Leffler* v. *Field*, 33 *id.* 390.)

X. The referee's findings of fact are against evidence, in that it is not only contrary to the defendant's testimony, but is also contrary to the testimony of the plaintiff himself.

*Jas. M. Smith*, for the respondent.

I. The evidence fully justified the report of the referee. The work was commenced by the plaintiff under a verbal agreement with Sullivan, the lessee, to do the work for $4,700. Sullivan failed to pay according to his agreement, and the plaintiff refused to go on, and relinquished the work. The defendant, then, to induce the plaintiff to go on with the work, agreed to pay him $2,000 when the work was completed. The work was completed according to agreement. When the plaintiff called on the agent of the defendant, there was no reference made to the $1,000 that had been previously paid to Sullivan.

II. The plaintiff never took possesion of the premises, as claimed by the defendant ; he merely took an assignment of the lease as collateral security, and never entered into possession. Sullivan employed the agents to collect rents. Sullivan gave the lease to the tenants, and told the agent to pay rents to the plaintiff. The plaintiff did not exercise any authority over the premises after the assignment of the lease, or receive any rent from tenants. Sullivan still owes about $1,000 for the work. It being conceded that the work was done by the plaintiff, the issue resolves itself into the single question, did:

the defendant agree to pay the plaintiff $2,000 on the completion of the work, and did the plaintiff do the work in accordance with the agreement. If he did, there is no question as to the plaintiff's right to recover. It was an original indebtedness on the part of the defendant. The evidence upon this is conclusive.

III. The fact is conceded that the work was not performed in accordance with the plans shown to Mr. Bresler by Sullivan. That by the plans the wall was to be a twelve inch wall, and that it was built but an eight inch wall, and that it was built in accordance with the agreement between the plaintiff and Sullivan.

IV. The decision of the Special Term was right; upon the facts presented by the testimony the questions raised by the defendant had no legal evidence to sustain them. There were but the simple issues: Was the work done? Did the defendant agree to pay, and what was the amount due? The evidence is uncontradicted, that the lease was simply a pledge, and that the plaintiff, to secure the benefit of the pledge, took the assignment of the lease, and intended to get all the avails of the rent to apply on his claim against Sullivan. It would have been unjust and useless litigation to open that question again before the referee, as the defendant could have the full benefit of all the facts upon his appeal, without any special finding. (*Putnam* v. *Hubbell*, 42 *N. Y.* 106.)

V. A referee is not required to find upon any other facts than those which enter into and form the basis of the judgment to be entered upon his report. He is not required to negative in express terms any other fact. Facts not found are necessarily negatived by implication. (*Sermont* v. *Baetjer*, 49 *Barb.* 362. *Bartle* v. *Gilman*, 17 *How.* 1.)

VI. The omission by the defendant to request the referee to pass upon any issue he desired to have passed upon was fatal to the motion to refer back to the referee.

(*Grant* v. *Morse*, 22 *N. Y.* 323. *Ashley* v. *Marshall*, 29 *id.* 494. *Brainerd* v. *Dunning*, 30 *id.* 211.)

VII. The defendant can have here the same benefit if error has been committed by the referee, that he could have had if the findings had been special. He is not concluded by findings of matters of fact, in the absence of evidence tending to sustain them, either in this court or in the Court of Appeals. (*Putnam* v. *Hubbell*, 42 *N. Y.* 106.)

VIII. Upon the evidence offered, the question was one of fact as to whether the work was done under the promise of the defendant to pay. The finding of the referee upon that question, in favor of the plaintiff, is conclusive to the same extent·as the verdict of a jury, and the court will not disturb the findings, unless clearly against the evidence. (*Sinclair* v. *Tallmadge*, 35 *Barb.* 602. *Murphy* v. *Boker*, 3 *Rob.* 1. *Williams* v. *Vanderbilt*, 29 *Barb.* 491. *Conklin* v. *Thompson*, *Id.* 218. *Heritage* v. *Hall*, 33 *id.* 347. *Coddington* v. *Carnley*, 2 *Hilt.* 528. *Best* v. *Starks*, 24 *How.* 58.)

IX. The point urged by the defendant before the referee, in relation to the statute of frauds, was untenable. The promise, as the evidence shows, was not a promise to pay the debt of another, but was a promise to pay to the plaintiff $2,000, if the plaintiff did certain work ; not a promise to pay if Sullivan did not pay for the work. The case of *Brown* v. *Weber*, (38 *N. Y.* 187,) relied upon by the defendant before the referee has no application to the facts of this case. In that case the defendant promised the plaintiff that he would see he got his pay, if he furnished the mill according to contract. That promise was contingent on the non-fulfillment of the original contractor. In the case under consideration, the contract between the defendant and the plaintiff was that the defendant should pay the plaintiff $2,000 as soon as the building was completed, not "that he would see that he got his pay." In the

case of *Brown* v. *Weber*, Grover, J., says, the test to be applied to every case is, whether the party sought to be charged is the principal debtor primarily liable, or whether he is only liable in case of the default of a third person, in other words whether he is the debtor, or whether his relation to the creditor is that of a surety to him for the performance, by some other person, of the obligation of the latter to the creditor. In *Nelson* v. *Boynton*, (3 *Metc.* 396–400,) Chief Justice Shaw, says, a class of cases not within the statute, is where although the effect of the promise is to pay the debt of another, yet the leading object of the undertaker is to subserve or promote some interest of his own. (*Farley* v. *Cleveland*, 4 *Cowen*, 432–439. *S. C. on appeal*, 9 *id.* 639. *Lawrence* v. *Fox*, 20 *N. Y.* 268. *Gold* v. *Phillips*, 10 *John.* 412. *Olmstead* v. *Greenly*, 18 *id.* 12. *Mallory* v. *Gillett*, 21 *N. Y.* 412.)

*By the Court*, FANCHER, J. The defendant appeals from a judgment entered on the report of a referee, on the 18th of May, 1872, for $2,698; also from an order of the Special Term denying a motion to resettle the case. The defendant was head landlord of 863 Sixth avenue, in the city of New York. In the fall of 1868, John J. Sullivan, the sub-lessee of the premises, agreed with the plaintiff to make some alterations in, and repairs to, the building; for which the contract price agreed on was $4,700. When part of the work was done, Sullivan paid the plaintiff $1,000 on account. The plaintiff went on a little further, and asked for more money. Sullivan said he had no more money; whereupon the plaintiff refused to go on with the work. The parties then went over to see the defendant. He was absent from the city; but they saw his brother, Louis Bresler, who told the plaintiff if he would go on and complete the work, he would get the $2,000 they, or his brother, had agreed to pay Sullivan. The defendant

returned, and the plaintiff, about the first of May, 1869, called on him. The defendant then said to the plaintiff he had agreed to pay John J. Sullivan $2,000 toward these repairs and alterations, and if he would go on and complete the work, he would pay it to him, when the work was done. The plaintiff accordingly went on and completed the alterations and repairs ; and this action was brought to recover the. $2,000.· The defence was a general denial, and an alleged counter-claim due from Sullivan to the defendant, for rent of the premises. The agreement of the defendant with Sullivan to pay the $2,000, was endorsed on the lease, and is dated the 4th of March, 1869. The lease was assigned by Sullivan to the plaintiff on the 24th of March, 1869, as a collateral security.

The referee found that the plaintiff performed the work and furnished the materials in and about the alteration and repairs of the premises ; that the defendant promised to pay him therefor $2,000 when the work was completed ; that no part of the amount had been paid ; and he ordered judgment for the $2,000, and interest.

There can be no doubt that the judgment of the referee is correct. The defendant became, himself, liable to the extent of $2,000, on his promise to the plaintiff, made upon a valid consideration, which he has received. The promise was an original one, and in no sense collateral, or a promise to pay the debt of another. The defendant entered into an independent obligation of his own, and his promise to pay was not contingent upon the failure to pay of another. It was not an existing or prospective debt of a third· party which the defendant agreed to pay ; it was a promise to pay the plaintiff $2,000, on a new and original consideration, which he supplied by the work and materials he afterward furnished. So far as the plaintiff is concerned, in reference to the promise, the defendant cannot point to Sullivan as the original debtor. The defendant is him-

Tallman *v.* Bresler.

self the debtor to the plaintiff, to the extent of the $2,000, which he promised to pay him. (*Mallory* v. *Gillett*, 21 *N. Y.* 412. *Brown* v. *Weber*, 38 *id.* 187.) The proposition of the defendant's counsel cannot be maintained, that the promise was without consideration; for there was valid consideration for the promise in the undertaking of the plaintiff to perform, and in the subsequent performance of the work. Nor is the position tenable that no harm resulted to the plaintiff, from what he has done, because of his legal obligation to Sullivan to do the work. The evidence shows, that Sullivan had refused to pay, and the contract with him for that reason, had been abandoned by the plaintiff, before the arrangement with the defendant was made. In contemplation of law the work performed and materials furnished by the plaintiff, upon the promise of the defendant to pay therefor, were to subserve and promote the interest of the defendant. (*Nelson* v. *Boynton*, 3 *Metc.* 396. *Farley* v. *Cleveland*, 9 *Cowen*, 639.)

The counter-claim of the defendant is not made out. The plaintiff never took possession of the premises; and, therefore, never became liable for the rent in respect of his possession. The assignment of the lease to him was by way of mortgage, and it is expressly stated to be made "as collateral security for the payment of $3,700 to become due to the said Tallman on completion of the building on the premises mentioned in said lease; and, on repaying said sum, the said Tallman is to re-assign this lease to the said Sullivan." The mortgagee of a term, who has never taken possession, is not an assignee of the whole term, or liable for rent in arrear; the mortgage being but a security, and the legal estate still remaining in the mortgagor. (*Walton* v. *Cronly*, 14 *Wend.* 63. *Astor* v. *Hoyt*, 5 *id.* 603. *Evertson* v. *Sawyer*, 2 *id.* 507.) A naked right, and a beneficial enjoyment, are distinguishable, *Demainville* v. *Mann*, (32 *N. Y.* 207;) and it is only when a mort-

gagee takes possession, that he has the estate *cum onere*, and becomes liable as assignee upon the covenants contained in the lease. (*Eaton* v. *Jaques, Doug.* 454.) It is not correct to say that, because the plaintiff entered upon the premises to make the repairs, he had the possession as assignee of the lease ; nor is he a mortgagee in possession.

The defendant has appealed, also, from an order of the Special Term, denying a motion to direct the referee to resettle the case. He insists the referee did not pass upon all the issues. We do not think that any further findings by the referee were necessary in order to a proper review of all the questions litigated in the case. Exceptions to such findings as were made by the referee, would be effectual to bring here for review all the material questions arising upon the pleadings and evidence.

The order denying the motion for a resetlement of the case, should be affirmed, with $10 costs ; and the judgment entered on the report of the referee, should be affirmed, with costs.

[First Department, General Term, at New York, May 5, 1873. *Ingraham* and *Fancher*, Justices.]