JANE BUCHANAN, CHARLES F. BUCHANAN, OSCAR H. BUCHANAN, JOSEPH B. BUCHANAN, EMMA V. BUCHANAN, WALLACE W. BUCHANAN, AND ELMER BUCHANAN, APPELLANTS, V. NATHAN K. GRIGGS, WILLIAM H. ASHBY, AND NATHANIEL HERRON, APPELLEES.

1. **Conveyance of Real Estate by Minor to Father:** MORTGAGE AFTERWARDS GIVEN WILL NOT DISAFFIRM DEED. When a minor conveys real estate to his father in possession, and the father soon afterwards executes a mortgage thereon, and in a short time thereafter dies, the son being one of the heirs of his estate, the execution of a mortgage on the real estate by the son four years after he attains his majority will not of itself amount to a disaffirmance of the deed made to the father, the mortgage not being inconsistent with the deed as it conveys no title and can have full force upon the interest of the mortgagor which he has in the estate by inheritance.

2. ————: FORECLOSURE OF MORTGAGE GIVEN BY FATHER. In such case, where the mortgage executed by the father is foreclosed after the son has attained his majority and he is made a party defendant, the foreclosure of the mortgage and conveyance of the real estate by the sheriff upon an order of sale will be an entire bar against the son and all persons claiming under him.

3. ————: THIRD PARTIES BARRED. And where, during the pendency of the suit to foreclose the mortgage executed by the father, the son executes a mortgage to a third party, such third party will also barred by the foreclosure proceedings.

4. **Equity Jurisdiction:** DECREE SET ASIDE FOR MISTAKE, ETC. Where by mistake or misunderstanding of parties a party having a perfect defense to an action which he has plead and is prosecuting is induced to abandon his defense, believing in good faith that such a decree will be entered and proceedings had as will perfect and quiet his title to real estate which he has purchased, and to which he has a perfect title, and, while relying upon what he believes the promise of the opposite party, such proceedings are had as will virtually destroy his title, he may, in equity, have the decree and proceeding set aside in order that he may make his defense.

APPEAL from the district court of Gage county. Tried below before BROADY, J.

L. M. Pemberton, for appellants. Decree should be set aside. Freeman on Judgments, § 492. 3 Pomeroy Eq. Jur., §§ 1365, 1371, note 2. Erie R. R. v. Ramsey, 45 N. Y., 637. Holland v. Fratter, 22 Gratt., 136. Pearce v. Olney, 20 Conn., 544. Moore v. Barclay, 16 Ala., 158. Adams v. Adams, 51 New Hamp., 388, and cases cited. Plaintiffs should have decree ordering sheriff to execute deed to Armstrong or his assignee, Buchanan. 2 Jones Mort., § 1652. Rorer Jud. Sales, §§ 438, 950–954. Huxley v. Rice, 40 Mich., 73. Deed was not disaffirmed. Bool v. Mix, 17 Wend., 119. Irvine v. Irvine, 9 Wall., 617. Goodnow v. Lumber County, 31 Minn., 168. Keil v. Healey, 84 Ill., 104. Bingham v. Basley, 55 Tex., 281. Jones v. Jones, 46 Iowa, 473. 2 Kent Com., 237. Bigelow v. Kinney, 3 Vt., 353. Terry v. McClintock, 41 Mich., 492.

N. K. Griggs, for appellees, cited: Colby v. Brown, 10 Neb., 414. 2 Kent Com., 238, note a. Tyler on Infancy, §: 31. Baylis v. Dinely, 3 Maule & Selw., 482. Curton v. Patton, 11 Sergt. & Rawle, 311. Tucker v. Moreland, 10 Peters, 58. Jackson v. Carpenter, 11 Johns., 539. Chapin v. Shafer, 49 N. Y., 407. Vaughan v. Parr, 20 Ark., 600. Prout v. Wiley, 28 Mich., 164. Jones Mortgages, 1371–3. Phillips v. Reeder, 18 N. J. Eq., 95. Hogendobler v. Lyon, 12 Kan., 276. Halstead v. Shepard, 23 Ala., 558. Bigelow v. Topliff, 25 Vt., 273. Lansing v. Montgomery, 2 Johns., 382. Bigelow Estoppel, 593–4, 541, 601. 2 Smith's Leading Cases, 662.

REESE, J.

Plaintiffs, as the widow, heirs at law, and administrators of Job Buchanan, filed their petition in the district court,

in which they allege, substantially, that Job Buchanan died
on the 18th day of Sept., 1880; that on the 4th day of July,
1871, Samuel Jones was the owner in fee-simple of the north-
west quarter of the south-west quarter of section number
eleven, in township number four north, of range number
six east of the sixth principal meridian; and that on that
day he executed and delivered a mortgage on said property,
together with other real estate owned by him, to one John
Armstrong, to secure the payment of the sum of $4,200.00,
due in one year after date, and which mortgage was also
signed by the wife of said Samuel Jones; that Jones died
on the 8th day of February, 1872; that John Armstrong
assigned the note and mortgage to one William Null, who,
on the 3d day of October, 1872, commenced an action to
foreclose the mortgage. On the 8th day of November,
1877, Null obtained a decree of foreclosure, the amount of
the decree being $4,300.00. During the year 1878 Null
sold and transferred the decree to one James M. Arm-
strong, who afterwards sold and transferred it to said John
Armstrong, the original mortgagee. On the 26th day of
July, 1880, John Armstrong sold and transferred it to said
Job Buchanan, now deceased. On the 31st day of July,
1880, an order of sale was issued, and on the 7th of Sep-
tember, of the same year, the land was sold by the sheriff,
under the order of sale, to the said Job Buchanan, which
sale was confirmed by the district court and a deed ordered,
which was executed by the sheriff on the 22d day of March,
1881, and the deed duly placed on record in the deed rec-
ords of Gage county; that by these proceedings the plain-
tiffs became the owners of the fee-simple titles to the real
estate in dispute.

It is further alleged that on or about the 13th day of
April, 1874, and while the foreclosure suit was pending,
one John Jones, who was the son and heir of Samuel Jones,
and who was one of the defendants in the foreclosure pro-
ceeding, with a fraudulent intent, executed and delivered to

the defendants, Nathan K. Griggs and Wm. H. Ashby, a mortgage for $500.00 upon said land, and that the mortgage was placed upon the mortgage records of Gage county, and that the only consideration therefor was an agreement on the part of said defendants that they should defeat the foreclosure proceedings; that if they failed to do so the mortgage should be null and void; and that they did fail to defeat the foreclosure; that at the time of the execution of said mortgage the said John Jones had no right, title, or interest in or to the land, except as one of the heirs of said Samuel Jones, then deceased, all of which said Griggs and Ashby well knew, and that all of said interest of said John Jones was forever barred and foreclosed by this final decree and sale under the foreclosure of the mortgage executed by Samuel Jones; that on the 3d of December, 1878, Griggs and Ashby commenced an action in the same court for the purpose of foreclosing the mortgage executed to them by John Jones, and made the heirs and administrators of Samuel Jones, as well as John Armstrong, who was then the owner of the decree above referred to, parties defendant; and that John Armstrong appeared and filed his answer, setting up the foregoing facts, and which were a full defense to the action, when a contract was entered into between John Armstrong and Ashby and L. W. Colby, who was the attorney for Griggs and Ashby, whereby Armstrong, for a valuable consideration, purchased the note and mortgage from Griggs and Ashby, and it was agreed that he was to have all their interest therein and in the foreclosure thereof, the same to be prosecuted to a final termination in their name but for his benefit, and that he was to be the owner of the decree when finally obtained, and that upon the sale of the property it was to be bid in for him; that Armstrong made no further defense to the foreclosure suit and allowed them to take their final decree, relying upon their agreement that it was to be done for his benefit, the decree being rendered on the 1st day of October, 1879;

that the consideration paid for said note and mortgage was: the full amount they would have been entitled to had their note been based upon a valid consideration; that after the decree was rendered the land was to be bid in by them in his name; that the land was sold by the sheriff under the decree and order of sale, and on the 10th day of April, 1880, and in pursuance of said agreement, the real estate was sold, nominally, to Griggs and Ashby, who bid it in in their own names, but for the use and benefit of said Armstrong, and that he being the real party for whom the land was purchased, he became entitled to a deed upon confirmation of the sale, which took place on the 13th day of April, 1881. On the 26th day of July, 1880, Armstrong sold and assigned to Job Buchanan all his interest in the decree, and by a quit-claim deed conveyed to him all his interest in the real estate, and Buchanan took the property subject to taxes and costs, which he assumed and agreed to pay; that from the time of the making of the agreement between Armstrong and defendants, Griggs and Ashby, until the sale of the property by the sheriff, Ashby acted as the attorney for Armstrong and Buchanan, and advised the purchase by Buchanan of Armstrong's interest, and that relying thereon Buchanan made the purchase; that the sale to defendants was confirmed, but that they now claim that they are the owners of the decree, and that they purchased the property for themselves, and not for Armstrong, and that they are entitled to a deed, and unless restrained from doing so the sheriff would make to them instead of to Armstrong a deed of conveyance; that they claim that said John Jones was the absolute owner of the mortgaged premises at the time of the execution of the mortgage by him to them, and that the mortgage created a valid lien upon the land; that the basis of their claim is, that in the year 1869 John Jones, being then a minor, owned the land, and while yet a minor conveyed it to his father, Samuel Jones, who mortgaged it to Armstrong in 1871, and that

after attaining his majority disaffirmed the conveyance and mortgaged to them. But that John Jones not only did not disaffirm the conveyance after attaining his majority, but that he fully affirmed and ratified the same, and that he and all persons claiming under him are estopped to set up any claim thereto by reason of his minority at the time of his conveyance to his father; and that, at all events, Griggs and Ashby are estopped from setting up any claim by reason of the proceedings had in connection with the contract with Armstrong and the entering of the decree of foreclosure.

An injunction was prayed for restraining the execution of the deed by the sheriff, and that he be decreed to execute the deed to Armstrong or Buchanan; that their title be quieted as against defendants and all persons claiming under them, or that the mortgage from John Jones be declared null and void, and to create no lien upon the premises adverse to plaintiffs, and that the decree of foreclosure and sale by the sheriff be annulled and set aside, and for general relief.

To this petition the defendants answered, admitting the death of Samuel Jones, and the representative capacity of plaintiffs, the execution of the note and mortgage by him, their assignment to William Null, the rendition of the decree of foreclosure in his favor; the assignment to James Armstrong and his assignment to John Armstrong, and the assignment by him to Job Buchanan, and the execution of the sheriff's deed, but deny that Samuel Jones was the owner of the land in question at the time of the execution of the mortgage. They also admit the execution of the mortgage to them by John Jones, and that, at that time they were in partnership, the subsequent foreclosure proceedings by them, the execution of the contract with Armstrong, but allege that it was afterwards rescinded, They admit that they claim to be the owners of the decree. and that they demand a deed from the sheriff, and allege

that they are entitled to it. They allege that John Jones, in 1869, and when a minor, conveyed the premises to his father, Samuel Jones, deny that upon attaining his majority he ratified the conveyance, but allege that he expressly disaffirmed it, and mortgaged the land to them, and that at the time of making the mortgage he was the legal and equitable owner thereof.

The answer then reviews the allegations of the petition, and plead various estoppels which we do not deem it necessary here to notice.

After trial the plaintiffs filed an " amendment to their petition to make it correspond with the facts proven," by which they allege that after the rescission of the contract between Armstrong and Ashby and Colby, on the 12th of February, 1880, another agreement was made between Armstrong and Ashby in which it was agreed between them that in consideration of what Armstrong had paid Ashby, amounting to over $700, Ashby was to put Armstrong in possession of the property in controversy, and was to carry out the original contract made between Armstrong and Ashby and Colby, and that Ashby was to proceed to have the property sold and purchased in the name of Armstrong, and the deed made to him, and that, relying upon the agreement with Ashby, he paid no further attention to the matter, but paid to Ashby the said sum of $700. That defendants did bid in the land, but in their own name instead of his.

A trial was had which resulted in a finding and decree by the court, setting aside the sale made by the sheriff, but holding that the lien created by the mortgage and decree of foreclosure was a valid and subsisting lien in favor of defendants, dissolving the injunction, and ordering the resale of the property. From this decree plaintiffs appeal.

According to our view of the case the decree of the district court cannot stand. By the pleadings and proofs it is established beyond any question that John Jones, while

a minor, received a conveyance of the land in question from his father, and reconveyed it to him. The deed made by the father was on the 20th day of February, 1869. The reconveyance was on the 21st day of September, 1870. The mortgage to Armstrong was executed July 4th, 1871. On the 22d day of January, 1872, John attained his majority. On the 8th day of February, 1872, Samuel Jones died. From the time of the acquisition of the title by Samuel Jones—long prior to the conveyance to John—until his death he was in the possession of the land, John never at any time being in possession. On the 13th day of April, 1874, John Jones executed the mortgage to defendants, that being the first act of his with reference to the land. The proceeding to foreclose the mortgage executed by Samuel Jones was commenced on the third day of October, 1872, to which John, then having attained his majority, was made a party defendant, which action was pending at the time of the execution of defendants' mortgage.

It cannot be said that the bare execution of this mortgage was a disaffirmance of the conveyance to Samuel Jones, for two reasons:

*First.* Before the simple execution of a deed made by a person after coming of age will amount to a disaffirmance of a conveyance made during minority, the second deed must be of as high a character as the first. That is, it must appear on its face to undo that which has been done by the former deed. If the first is an absolute conveyance, so must the second be in order to work a disaffirmance of the first within itself. *Jackson v. Burchin,* 14 Johns., 124. *Jackson v. Carpenter,* 11 Id., 539. *Bool v. Mix,* 17 Wend., 132. *Eagle Ins. Co. v. Lent,* 1 Edw., 301. *Tucker v. Moreland,* 10 Peters, 58.

Again, we think it is well established, both upon principle and authority, that the second deed must be so inconsistent with the first that both deeds cannot stand, in

order of itself to work a disaffirmance of the first. *McGan v. Marshall*, 7 Humph., 121. *Eagle Ins. Co. v. Lent*, 6 Paige, 635. Schouler's Domestic Relations, 588 (2d Ed.) "In this state a mortgage of real estate is a mere pledge or collateral security creating a lein upon the mortgaged property, but conveying no title nor vesting any estate, either before or after condition broken." *Davidson v. Cox*, 11 Neb., 250.

*Second*, At the time of the execution of the mortgage to defendants, John Jones was one of the joint owners of the land with the other heirs of Samuel Jones (he being then deceased), subject only to the mortgage made by Samuel to Armstrong, the life estate of his mother, and the claims of the creditors of his father, if any existed, assuming that he did not desire to disaffirm the conveyance to Samuel. This interest was a mortgageable one and was subject to the decree in the foreclosure suit. Jones on Mort., § 1411, 1314.

There is nothing shown by way of declaration or recital in the mortgage which would indicate any intention of the mortgagor to disaffirm any prior act of his. It may also be noted as a circumstance tending to throw some light on his intention at the time of the execution of the mortgage, that on the 16th day of May, 1876, he conveyed the real estate in question to one M. W. Thompson, and in the deed he expressly excepts from the covenant of warranty the mortgage executed by his father to John Armstrong, the exception being as follows: "Subject, however, to a mortgage executed by Samuel Jones to John Armstrong, dated January 5, 1871, and recorded in the records of Gage county, book B, page 161." The deed also excepts the mortgage executed to defendants. It is true that the date is referred to as "January 5th, 1871," while the mortgage to Armstrong was dated July 4th, 1871, but it is proven that Samuel Jones never executed but the one mortgage to John Armstrong, and there can be no doubt but that it was the

one referred to in the deed.   It was clearly impossible for
the mortgage to Armstrong to stand unsupported by any
title in Samuel Jones.   His title was derived from John
Jones.    By the reservation in the deed to Thompson,
John Jones clearly recognized the validity of the Arm-
strong mortgage.   Schouler Dom. Rel., 438.   By that he
recognized the validity of his deed to his father.   The deed
to Thompson was executed more than four years after
John's majority.   Had it been the intention of John Jones
to disaffirm the deed executed by him to his father it
would be quite reasonable and in accord with ordinary
human action for him to have done some act which would
have unequivocally demonstrated that intent.    No such
demonstration has been made.    The foreclosure of the
Armstrong mortgage was persistently fought in the courts,
being finally decided in *Jones v. Null*, 9 Neb., 57, but not
upon the ground that Samuel Jones had no title to the
land at the time of the execution of the mortgage or that
John had disaffirmed his deed to him.   If he had such a
defense and desired to avail himself of it, he was called
upon to do it in that action.   It is very evident such was
not his intention.   Such being the case, it is clear that
Griggs and Ashby, having received the mortgage during
the pendency of that action, could stand in no better or
more advantageous position than did their grantor.   Jones
on Mortgages, § 1411.   *Metcalfe v. Pulvertoft*, 2 Ves. & B.,
208.   *McPherson v. Housel*, 13 N. J. Eq., 301.   *Jackson
v. Losee*, 4 Sand. Ch. 407.   *Zeiter v. Bowman*, 6 Barb., 133.
*Griswold v. Miller*, 15 Id., 520.   *Cleveland v. Boerum*, 3
Abb. Prac., 294.   *Ostrom v. McCann*, 21 Howard's Pr. Rep.,
431.   The foreclosure of the Armstrong mortgage forever
barred the rights of John Jones in the land, and with his,
the rights of Griggs and Ashby and of Thompson.   The
execution of the sheriff's deed conveyed to the purchaser
all the title of all the parties to the action.   Jones on Mort-
gages, § 1654.   *Young v. Brand*, 15 Neb., 601.   See also
§ 853 of the Civil Code.

Prior to the time the contract between Ashby and Armstrong was made, Griggs and Ashby virtually had no standing in court in their foreclosure proceeding, and the defense plead by Armstrong was a complete bar to their recovery. The testimony is contradictory as to what the real agreement between them was. Griggs insists he gave no person any authority to make it for him. As all contracts must be mutual to be binding, if he was not bound Armstrong was not, and has therefore been deprived of his defense unjustly. Taking the testimony for our guide, it is evident there has been a mutual misunderstanding between the parties, and by that misunderstanding Armstrong has been deprived of his defense in the suit of Griggs and Ashby against Jones and others.

It follows that the decree of the district court must be reversed, and the decree in the case of Griggs & Ashby against Jones and others, together with all proceedings thereunder, set aside and vacated, and Armstrong or his grantee be permitted to make his defense.

JUDGMENT ACCORDINGLY.

THE other judges concur.