## SLANE v. POLAR OIL COMPANY

(No. 1888; February 18, 1935; 41 Pac. (2d) 490)

For the appellant, there was a brief by *Chester Ingle*, of Thermopolis.

For the respondent, there was a brief by *C. W. Axtell*, of Thermopolis. Both sides submitted cause without oral argument.

RINER, Justice.

The district court of Hot Springs County sustained a general demurrer to the amended petition of W. T. Slane, filed in an action brought by him in said county against Polar Oil Company, a corporation. Slane declined to plead further and indicated his determination to stand upon the pleading aforesaid. In consequence, a judgment dismissing the action was entered against him. To review that judgment, the record is brought here by direct appeal. The parties will be referred to as aligned in the court below.

The allegations of the amended petition essential to be considered in deciding the case are in substance as follows:

After setting out the corporate existence of the defendant under Wyoming law, the pleading in question states that on or about September 2, 1925, the plaintiff demised to C. A. Mulock and Mary Mulock, Lots Twenty-one in Block Two in the Town of Thermopolis,

Wyoming, together with all buildings and improvements thereon, for the term commencing September 2nd, 1925, and until September 1st, 1940, at the monthly rental of Two Hundred Dollars per month, payable in advance; that the said lessees covenanted with the plaintiff to make such rental payments, and also to pay the general county and city taxes upon said premises during the lease period; that the lessees, on or about the 2nd day of September, 1925, took possession of the demised premises and "continued in possession thereof until about December 30th, 1925, and for some time thereafter with the said defendant"; that on the day last mentioned, said lessees assigned the lease aforesaid to the defendant, which accepted the same and immediately entered into possession thereof, its possession continuing up to February 23, 1927, and the assignment being duly recorded in the office of the county clerk of Hot Springs County, Wyoming.

This alleged assignment is attached to and made a part of plaintiff's pleading, and, omitting the attestation of the witnesses and the acknowledgment by the signers thereof as well as the lease form attached thereto and above described reads:

"KNOW ALL MEN BY THESE PRESENTS, That we, C. A. Mulock and Mary Mulock, of the County of Hot Springs in the State of Wyoming for and in consideration of the sum of Ten Thousand and no/100th Dollars ($10,000.00), to us in hand paid, the receipt whereof is hereby confessed and acknowledged, do grant, bargain sell and deliver unto Polar Oil Company, a Corporation, duly organized and existing under the laws of the State of Wyoming and unto its successors and assigns, all our right, title, claim, interest and possession in and to a certain Indenture of Lease between one W. T. Slane and us of date the 3rd of September, 1925, and as the same appears of record in the office of the County Clerk and Ex-Officio Register of Deeds of Hot Springs County, Wyoming being filed therein at 2:30 o'clock P. M. September 4th, 1925 and

is recorded in Book 13 of Miscellaneous Records on page 10 thereof hereto attached and made a part of this Assignment.

"TO HAVE AND TO HOLD the above and foregoing Lease and all thereof until there is fully paid to said Polar Oil Company, its successors or assigns the sum of Ten Thousand and No/100 Dollars ($10,000.00), together with interest therein at the rate of Eight (8%) percent per annum according to the condition of a certain promissory note given this day and date by us to the said Polar Oil Company.

"WHEREUPON and upon said payments of principal and interest this said Assignment is to become null and void and not otherwise.

"IN WITNESS WHEREOF we have hereunto set our hands and seals this 30th day of December 1925.

C. A. Mulock

Mary Mulock"

Plaintiff's pleading then avers that the lessees aforesaid have not paid to the defendant any sum whatsoever upon the note mentioned in the alleged assignment, that no reassignment of said lease has been accepted by C. A. Mulock and Mary Mulock or made with the latter's knowledge or consent, the defendant having made no valid assignment of its interest in said lease; that by reason of the said assignment, the defendant became liable to pay the rent due under the lease aforesaid, and the taxes, but that "since the 1st day of February, 1927, the said defendant abandoned said premises and has failed and refused to pay any rental falling due and owing under said lease since said time"; that it has not paid the taxes for the years 1926 and 1927, and that on account of the balance of rental money due under said lease between February 1st, 1927 and March 23rd, 1928, the taxes unpaid as aforesaid, and the damages alleged as Fifty Dollars

per month for the balance of the term, the reasonable rental of the premises for that period being alleged as not to exceed One Hundred Fifty Dollars per month, it is asked that judgment be given against the defendant for the sum of $10,975.51, which the defendant has failed and refused to pay.

A mortgage, says 19 R. C. L. 243, § 4, "may be generally defined as a conveyance of property to secure the performance of some obligation, the conveyance to be void on the due performance thereof. But while it is in form a conveyance, and is for some purposes regarded as such in a number of jurisdictions, it is in essence a pledge of property as security. Recognition of this fact has always been made in equity, and of late years in the courts of law of some jurisdictions. Accordingly, the declaration is frequently made that a mortgage is a security or lien for the performance of an obligation." Tested by this statement, it is apparent that the instrument referred to in plaintiff's amended petition as an "assignment" is nothing more than a mortgage to the defendant of the leasehold interest held by the Mulocks. Indeed, both parties to this controversy seem to regard the instrument as of that character, as the briefs of their respective arguments indicate. Accordingly, the question arises upon the defendant's general demurrer to the pleading above described, whether the mortgagee of such an interest who takes possession of the leased premises, holds the same during a part of the term, and thereafter abandons them, is liable upon the covenants of the lease for taxes due thereon during the period of that possession, and also for rentals only becoming due afterwards. It is clear from the allegations of the pleading that no claim is made for rentals accruing during the time the defendant was in possession, they apparently having been paid, although by whom does not appear.

The authorities are not agreed as to the proper solution of the suggested problem. However, their disagreement would seem to arise to some extent, at least, on account of the varying views both as to the legal effect of a mortgage and as to the consequences flowing from a mortgagee's taking possession of the mortgaged property.

Under the English doctrine of mortgages, there can be little doubt that the mortgagee would be held liable. In England, a mortgage is in truth, and not merely formally so, a conveyance of the estate, vesting in the mortgagee a title to the premises subject to be defeated until condition broken, but thereafter absolute. The mortgagee holding the property thus and the covenants of the lease requiring payment of rentals, taxes, etc. running with the land, their performance logically devolves upon him. See Williams v. Bosanquet, 1 Brod. & Bing. 238, where it was held that when a party takes an assignment of a lease by way of mortgage, as a security for money lent, the whole interest passes to him and he becomes liable on the covenant for the payment of rent, though he never occupied or became possessed of the property in fact. See, also, Mayhew v. Hardesty, 8 Md. 479; Abrahams v. Tappe, 60 Md. 317; McMurphy v. Minot, 4 N. H. 251; the decision in the last case, however, being questioned in Lord v. Ferguson, 9 N. H. 383.

Nevertheless, even in England, as is pointed out in 18 Halsbury's Laws of England 589, an equitable assignee through being an equitable mortgagee by deposit is not liable on the covenants of the lease, notwithstanding that he has entered into possession, and the case of Moore v. Greg et al., 2 Ph. 717, is cited.

That case was an appeal from an order of the Vice-Chancellor allowing a general demurrer to the bill for want of equity. The case made by the bill was this:

The plaintiff demised certain property and the lessee thereafter deposited the lease with the defendants as security for a sum of money; the rent being in arrear, the owner of the estate distrained and the distress was replevied, but that the amount of rent then due together with an additional sum which afterwards became due was all ultimately paid by the defendants, the depositaries of the lease. It appeared, also, that at the time the distress was levied, the lessee was, himself, in possession, but that subsequently the premises were found to be held by the depositaries of the lease. No rent was due when the bill was filed but the bill prayed a declaration by the court that the defendants, the depositaries aforesaid, were liable prospectively for the rents reserved by the lease and, also, that they be decreed to accept and the lessee to execute an assignment of the lease. Affirming the decision of the lower court and dismissing the appeal, the Lord Chancellor said, in part:

"The object is to compel a party holding a lease by way of deposit to make himself the legal assignee. What would that be but for equity, instead of following the law, which is the usual rule, to run before the law? Indeed it was hardly argued that the mere taking a deposit of a lease would create such a liability; but it was said that there was in this case something more; that the Defendants had been in possession, and had paid the rent due from the party from whom they took the deposit. But is that to make them liable to the covenants which the lessee had entered into? A lessee is liable to a distress from his landlord, and, the goods being distrained, some other person, from interested motives, or motives of friendship, comes in and pays the demand of the landlord, taking no assignment nor any security beyond what he had before. That, of course, cannot make him liable to any of the covenants in the lease. He pays the money for or on behalf of the party who owed it. Well, then, does his being in possession make him liable? If that were so, there would be an end of the distinction between an assign-

ment of a lease and an under-lease. Taking an under-lease does not render you liable to all the covenants in the original lease, but taking an assignment does; which shows that the effect of possession depends upon the title under which it is taken, and that mere possession not taken under a title can go for nothing."

Concerning the nature of a deposit of title deeds as security, we find 41 C. J. 306 stating that, "In England, and according to the doctrine of the common law, a deposit of the title deeds of an estate in the hands of a creditor as security for a debt, under an agreement that the creditor is to retain possession of the same until the debt is paid, creates a lien on the estate which is considered as an equitable mortgage." It is thus evident that the English view, relative to a contract which imposes merely a lien upon property to secure the performance of an obligation, is not far removed from that taken by the courts of California and Minnesota, to whose decisions reference will be presently made. Mr. Tiffany, in his work on Landlord and Tenant, so indicates for referring to the position taken by these decisions and, citing Moore v. Greg, supra, he says, at page 977 of Volume 1:

"In accordance with the latter view are the decisions, rendered in jurisdictions where the legal title passes by a regular mortgage, that one claiming under an equitable mortgage or lien, which does not involve a transfer of the legal title, is not liable on the covenants although he takes possession."

In New York, as in the states last mentioned, a mortgage is regarded as a mere security and the legal title remains in the mortgagor. In that state, however, the mortgagee who does not take possession is not held liable as assignee of the leasehold, but in possession is declared to be responsible as such. Astor v. Hoyt, 5 Wend. 603; Childs v. Clark, 3 Barb. Ch. (N. Y.) 52, 49 Am. Dec. 164; McDonald v. Rosenblum, 150 Misc.

556, 269 N. Y. S. 562. It would appear that in that state, also, when possession is taken by the mortgagee the title of the property is thereupon affected. In Astor v. Hoyt, supra, the court used this language:

"To recover against an assignee of the lessee, it must be averred and proved that all the right, title and interest of the lessee passed by assignment to the assignee. After these decisions, (referring to previous decisions cited) can we say that all the right, title and interest of the mortgagor has passed to the mortgagee out of possession? So far from it, we hold that the mortgagee, before foreclosure or the commencement of proceedings to foreclose, has but a chattel interest. It is perfectly clear, therefore, that a mortgagee of a term out of possession is not in this State to be considered the assignee. In England there must be a reconveyance or reassignment; so says the Court in Williams v. Bosanquet. Here that is not necessary; the transfer of the debt transfers the mortgage; payment extinguishes a lien and so does a tender. But if a mortgagee takes possession of the mortgaged premises lawfully, he must be then considered assignee, and the assignee must take the estate *cum onerone*. When the mortgagee takes possession, he then has all the right, title and interest of the mortgagor; then he acquires and the mortgagor loses an estate liable to be sold on execution. He is therefore substituted in the place of the mortgagor, who was lessee, and therefore is assignee and liable as such."

It may be noted that in Tallman v. Bresler, 65 Barb. 369, affirmed 56 N. Y. 635, it was held that the assignee of a lease as collateral security for the payment of a sum of money, who went upon the premises and made repairs and an alteration, all costing some $4700, was not liable as a mortgagee who had taken possession. Again, in Ireland v. United States Mortgage & Trust Co., 72 App. 95, 76 N. Y. S. 177, affirmed without opinion 175 N. Y. 491, 67 N. E. 1083, it appeared that the plaintiff had leased certain premises to a tenant for the term of twenty-one years, rentals payable quar-

terly. The tenant mortgaged this lease to the defendant, and thereafter agreed with it that it should act as his agent until the mortgage debt was paid, to collect the rent from subtenants and apply the collections first, to the payment of rent and other obligations under the lease, second, to pay for its own services, and lastly, any sums remaining to be applied on the mortgage debt, the defendant not being required to make any such payments except as the money was derived from the collections aforesaid. Under this state of facts, it was held that the defendant, by acting under the arrangement above described, did not incur liability to the plaintiff for the rent in excess of the amounts thus collected, and that it was not a mortgagee in possession.

In 52 L. R. A. (N. S.) 987, the author of the note states that:

"In those jurisdictions where a mortgage does not convey title, but is regarded as mere security for the debt, it is consistently held that a mortgagee of a leasehold out of possession is not liable to the lessor for rent as an assignee. But there is not complete harmony where the mortgagee takes possession of the premises."

After pointing out on the authority of many cases (id. p. 981) that it is not the "actual possession, but the right of possession under the assignment, that determines the liability of the assignee," he then says:

"Logically, possession by the mortgagee should, under that rule, be immaterial. Accordingly, it has been held that the mortgagee, even though in possession of the premises, is not liable to the lessor for rent. Johnson v. Sherman, 52 L. R. A. (N. S.), 15 Cal. 290, 76 Am. Dec. 481; Cargill v. Thompson, 57 Minn. 534, 59 N. W. 638. But in three states the courts, with some inconsistency, have held that, while the mortgagee out of possession is not liable to the lessor for rent, yet, if he takes possession of the premises under his mort-

gage, he becomes liable. Olcese v. Val Blatz Brewing Co., 144 Ill. App. 597; McKee v. Angelrodt, 16 Mo. 283; Knox v. Bailey, 4 Mo. App. 581."

New York cases to which reference has above been made complete the list of citations in the note.

The facts upon which the case of Johnson v. Sherman, referred to in the note aforesaid, arose were briefly these: The trustees of John and Mary Ellig leased to Brown and Keyser certain property in the City of San Francisco, California, for the term of ten years, at the monthly rent of Seven Hundred Fifty Dollars, payable each month in advance, the lessees for themselves covenanting to pay the rent and all taxes and assessments upon the premises, and to erect brick buildings thereon. The lease contained a provision that in case any rent should remain unpaid for the period of thirty days, the whole amount thereof for the unexpired term should immediately become due and payable. The lessees borrowed money on two occasions to complete the buildings they erected on the property. These funds were obtained from a firm, of which one Sherman was a partner. The last loan was for $5,000, evidenced by the usual notes, and as security for their payment the lessees, as they had previously done in connection with the first loan, executed to Sherman another assignment of the leasehold interest in the premises. Under this second assignment, he went into possession (not having before done so), and from its date the tenants of the property attorned to him. No rent was paid the lessors after the execution of the several assignments. While thus in possession of the property, Sherman was sued for the rent of the balance of the term, some $80,000, upon the acceleration rent payable clause above mentioned. Thereafter, to rid himself of the litigation, Sherman assigned his interest in the property to one Jeffries, a pauper and the servant of his lawyer. After that,

Jeffries and not Sherman received the property rentals as they were collected. It seems that Mary Ellig had brought a suit to obtain an accounting from the trustees aforesaid, and Johnson was appointed receiver and authorized to sue Sherman, Jeffries, and the tenants of the property, to obtain possession of the premises and the rents for which the lease stipulated subsequent to the assignments to Sherman. The receiver's action resulted in a judgment against the party last mentioned, for the rents from the date of the last assignment until the assignment by him to Jeffries, and also in a judgment against both Sherman and Jeffries for rents received from the date of the assignment to Jeffries to the commencement of the action, this last assignment to him being held merely colorable.

Reversing this judgment, after disposing of some preliminary questions in the case, Mr. Chief Justice Field said:

"The question then is this: Is Sherman liable for the rents from the date of his possession in March, 1855, to the date of his assignment to Jeffries in August following? The evidence discloses that this assignment was taken as security for the loan of five thousand dollars. All the parties admit that this was its object. Sherman so alleges under oath in his answer. Brown testifies to the same thing. The lessors were aware of the character of the transaction, and were not, therefore, in a position to assert rights founded upon the absolute form of the instrument. The admissibility of parol evidence to show that a conveyance, or assignment absolute upon its face was intended as a mortgage, is no longer an open question in this State. * * * In this State a mortgage is regarded as a mere security, and not as a conveyance vesting in the mortgagee any estate in the land either before or after condition broken. As a security for a debt, default in the payment does not change its character. Payment after default operates to discharge the lien equally with payment at the maturity of the debt. (Act concerning Conveyances, sec. 40.) Nor can possession

under the mortgage affect the nature of the mortgagee's interest; it does not abridge, or enlarge his interest, or convert what was previously a security into a seizing of the freehold; it does not change the relation of creditor and debtor, or impair the estate of the mortgagor, but leaves the rights and interests of the parties exactly as they existed previously. Possession taken by consent of the owner, or by contract with him, may confer rights as against third parties, but they are independent and distinct from any rights springing from the mortgage, from which they derive no support. In thus holding we only carry the doctrine that a mortgage is a mere security for a debt to its legitimate and logical result. (McMillan v. Richards, 9 Cal. 411; Naglee v. Macy, Id. 428.)

"In England, as we have before stated, a mortgagee of a term out of possession is liable as assignee, because he is by the mortgage invested with the entire estate. In New York, he is only liable when in possession, because until then, he has a mere chattel interest, but is held liable after possession taken, because then he is considered as having the title of the mortgagor. In this State, he is not regarded as ever having the title of the mortgagor, until judicial foreclosure and sale. The title remains with the mortgagor whether possession be taken, or otherwise. We only proceed therefore, one step beyond the New York cases—following the same course of reasoning—when we hold, as we do, that a mortgagee of a term in possession is not liable as assignee upon the covenants of a lease."

In Dutton v. Warschauer, 21 Cal. 609, 82 Am. Dec. 765, the same court again speaking through the same judge, reaffirmed the principle announced in the case of Johnson v. Sherman, supra.

In Cargill v. Thompson, also cited in the excerpt from the L. R. A. note, supra, the respondent, as in the California case just reviewed, contended that a mortgagee in possession of leased property was liable as an assignee on covenants running with the land. Holding contrary to this contention, the Supreme Court

of Minnesota examined the New York and California decisions on the point, and then said:

"We think the decisions of the California court in accordance with the better reason. We do not see how the mere act of the parties, of going into possession, and consenting to or acquiescing in it, can have the effect to pass the mortgagor's estate to the mortgagee. The latter, being let into possession under and because of the mortgage, is in only for the purpose of it, to-wit, for security. There can be no question but that he must account upon the mortgage debt for the net receipts because of the possession, nor but that, the debt being paid, his right to retain possession will, without any other act or ceremony, cease. The fact that the possession is added, as a further security, to the security which the mortgage of the title gives him, cannot change the lien of the mortgage into an estate. The right of the mortgagee remains a mere lien, though the power to enforce it against the profits issuing from the land is placed in his hands by letting him into possession. If an estate arises in the mortgagee, it is real estate, though the debt, of which it is only an incident, is personalty. Can the debt and the right of possession be severed? May the mortgagee assign the debt, as personalty, and retain the right of possession, as realty? In case of his death, will the estate go to the administrator, and the right of possession to the heirs? Or must both go to one, and to which of them? An estate sufficient to have cast on it the burdent of covenants running with the land will entitle the owner of it to the benefit of similar covenants, and *e converso*. In this state a mortgagee cannot, before foreclosure, maintain an action on the covenants in the deed to the mortgagor, though running with the land, because he is not the owner of the land with which such covenants run. We suspect the courts in New York would hesitate to hold that as soon as he gets possession he may sue upon or may release such covenants, which he certainly can do, if he has an estate that makes him the owner of them. We conclude that a mortgagee in possession is not subject to the burdens, nor entitled to the benefits, of covenants running with the land."

Again, where the trustee in a mortgage of leasehold property on which the mortgagor had erected a building, took possession of the building, paid the running expenses, and collected the rents, for the benefit of the bondholders of the mortgagor, it appeared that such possession was taken under the terms of the mortgage and at the request of the mortgagor. In Northwestern Mut. Life Ins. Co. v. Security Savings & Trust Co., 261 F. (C. C. A. 9th Cir.) 575, it was held that the trustee was not in such circumstances liable on the covenants of the lease for the ground rent, and that privity of estate through which liability would ensue to perform lease covenants running with the land required transfer of the legal title by the lessee and its acceptance by the assignee. In the course of its opinion, the court remarked, "From many cases which have considered the question, we refer to those which appear to be based upon the better reasoning," following this expression of its view of the matter with a discussion of the cases of Johnson v. Sherman and Cargill v. Thompson, supra.

Recalling that in the case at bar we are dealing with the mortgage of a leasehold, it must be remembered, also, that this court in Robinson Merc. Co. v. Davis, 26 Wyo. 484, 187 P. 931, declared that:

"A mortgage is not a conveyance. It is a mere security in the form of a conditional conveyance, and the interest which it vests in the mortgagee is not essentially different from that created by a mechanic's lien or an ordinary judgment (Davidson v. Cox, 11 Neb. 250; Buchanan v. Griggs, 18 Neb. 121). * * * In this state, as in the cases cited, the title to the property mortgaged does not pass by the mortgage to the mortgagee even on condition broken. The mortgage simply creates a lien upon the land, and it must be sold on foreclosure to pass the title."

To the same effect, also, is Bolln v. LaPrele Livestock Co., 27 Wyo. 335, 196 P. 748.

Our law being thus, relative to the character and effect of mortgages in Wyoming, it is evident that the cases from jurisdictions where a mortgage is regarded as an actual transfer of title, or where when a mortgagee takes possession he is held to have acquired the mortgagor's title, are not helpful. We must, perforce, turn then to those decisions where the mortgage is viewed as a mere security, and where a foreclosure sale must be had to pass the title, mere possession by the mortgagee not affecting the title of the mortgagor in any way.

We think that the position taken by the courts of California and Minnesota, as indicated by the reasoning of the eminent judges who spoke for those courts in the opinions from which quotations have hereinabove been given, is, as asserted by the Federal Circuit Court of Appeals for the 9th Circuit, to be preferred. It is clear that that position is more in accord, we think, with sound logic, as well as more in harmony with this court's interpretation of the law governing mortgages in Wyoming. Were we to adopt the view of the question before us advanced by appellant, it might lead, it is easy to see, to extremely harsh consequences. Take the case of a leasehold where the lessee covenanted to pay a high rental and heavy taxes, over a long term. He mortgages it to secure the payment of a comparatively small sum of money. The mortgagee, by agreement with the mortgagor, takes over possession of the leasehold for but a month or two, is then paid in full and, of course, leaves the property. Respondent would have us, under such circumstances, charge the mortgagee with a liability on all covenants running with the land, rentals, taxes, etc., to the extent of the remainder of the term—a liability, it might well be, to the extent of thousands of dollars. It is perfectly obvious that, in such a state of facts, neither the mortgagor nor the mortgagee would have intended

that the title of the former was by the mere fact of possession by the latter to be transferred. To so hold would be not only to set a trap for unsuspecting owners of mortgages but, also, to impose hardship on mortgagors. It seems to us that no mortgagee, in his senses, would take possession of the property thus liened as security, if he were thereby to render himself liable on the covenants of the lease. Yet, taking possession by the holder of the lien might be the only way in which both lessee and mortgagee could accomplish a payment of the mortgaged debt. Many other instances of the serious consequences flowing from such a decision will readily suggest themselves. We do not deem it wise to hamper business transactions of the character under consideration with burdens which none of the parties really intended should be assumed.

In this connection, it may be observed besides, that the lessor of the premises, when he finds that the rentals and taxes thereon covenanted to be paid by the lessees are not being met, always has his remedy. He can recover the premises from those in possession, and proceed against those contractually agreeing to be responsible for such liabilities.

In the case at bar, it is not even pleaded that the condition of the mortgage was broken, it being merely alleged that none of the sum of money stipulated to be paid has been paid. When that sum was due is apparently not stated. But, as we have seen, even if the condition had been broken, that of itself plus possession by the mortgagee would not effect a transfer of title and create a privity of estate, so as to carry liability on covenants in the lease running with the land.

Our conclusion being that the judgment of the District Court of Hot Springs County was correct, it will accordingly be affirmed.

*Affirmed.*

KIMBALL, Ch. J., and BLUME, J., concur.