## WOOD v. STEVENSON

(No. 1061; September 4, 1923; 217 Pac. 953.)

Mortgages—Impairment of Lien—Sale Subject to Lien—Princi-
pal and Agent—Real Estate Broker—Appeal and Error—Deci-
sion Limited to Points Urged in Brief.

1. A purchaser of mortgaged premises should not be a party
   to a diversion of sale proceeds from the person equitably
   entitled thereto.
2. The mere fact that a mortgagee knew that the mortgagor
   was selling the mortgaged premises to another under an
   agreement that the lands were free of incumbrance could
   not bind the mortgagee to release his mortgage.
3. A mortgagor has no power or authority in the absence of
   an express delegation or reservation thereof, to affect or
   impair the lien of a mortgage by a contract relating to,
   or a sale of the mortgaged premises.
4. An agent for the sale of property, must sell on the terms
   prescribed, and for the price authorized, and a sale other-
   wise made, will not be binding on the principal even
   though it is on more favorable terms than those author-
   ized.
5. An agent for the sale of property, must sell for cash and
   not on credit, unless authorized to the contrary or by a
   contrary custom.
6. Where it appears from the amount claimed due by a mort-
   gagee, that proceeds from other security was credited up-
   on the original debt, the Appellate Court will not re-
   verse the case for the mere reason, that the trial Court
   did not order the proceeds from the sale of other security
   endorsed on the indebtedness.
7. A credit endorsed on a mortgage indebtedness held prop-
   erly cancelled where the consideration therefor failed.
8. The Supreme Court may in accordance with the general
   rule, decide a case only upon the points urged and pre-
   sented in the briefs.

Appeal from District Court, Weston County; James H.
Burgess, Judge.

Action by W. J. Wood against E. C. Stevenson, to en-
join the foreclosure of a mortgage and for a decree of satis-
faction and other equitable relief. From a judgment of dis-

missal, plaintiff appeals. The material facts are stated in the opinion.

*Raymond, La Fleiche* and *Kem* for appellant.

Amendments are permitted even after judgment, (5707 C. S. Lellman v. Mills, (Wyo.) 87 Pac. 985.) The amendments desired, related to facts largely within the knowledge of defendant, and the trial court should have permitted the amendment of plaintiff's petition; a mortgagee consenting to a sale of the mortgaged property and accepting application of proceeds on his debt releases his lien, (27 Cyc. 1405). A grantee of mortgaged property, taking with the understanding that lien would be satisfied and without deduction of amount of lien from the purchase may defend against the lien for fraud. (Bennett v. Keehn, 15 N. W. 776; Ludington v. Harris, 21 Wis. 241; Samons v. Kearney P. Co., 110 N. W. 300; Woodward v. Jewel, 11 U. S. Sup. Ct. 784; Partridge v. Company, 78 N. W. 85.) The acceptance of sale proceeds by mortgagee discharges his lien. (Field v. Doyan, 25 N. W. 653; Pratt v. Waterhouse, 27 Atl. 855.) A purchaser of mortgaged premises is not obligated to see that the money is applied in discharge of the mortgage on property. (19 R. C. L. 368); mortgagee's consent to sale, need not be in writing. (Freek v. Milling Co., 32 Pac. 1103; New England Co. v. Company, 71 N. W. 130; Fredonia Bank v. Borden, 30 Atl. 975.) Stevenson placed himself in the position where he is now found. The sale from Andrews to Pyle was for a valid consideration. The chattel mortgage renewal affidavit, proved that respondent had given Andrews credit for the Pyle purchase; the evidence shows that Stevenson with the knowledge that Andrews had made the deal with Wood, sold the property to Pyle, credited the Andrews' debt with either $3900.00 or $4,000.00, and took the Pyle mortgage in payment of that sum; appellant is entitled to credit for the proceeds from the sale of the sheep; one holding liens upon two properties cannot release one to

the prejudice of a junior lien-holder, who has a lien on only one of the properties. (Jordon v. Bank, 9 N. W. 656.) Appellant stands in the relation of a junior lien-holder and is entitled to the same remedy. (Johnson v. Johnson, 8 N. J. E. 561; Sexton v. Pickett, 24 Wis. 346; Worth v. Hill, 14 Wis. 559; Semes v. Boykin, 27 Ga. 47.) The doctrine of marshalling assets is one of common justice, and is resorted to, where two or more creditors have claims against a common debtor. (Hughes v. Shannon, 13 Ky. L. R. 782; Newby v. Fox, 133 Pac. 890; 26 Cyc. 927; Stowe v. Powers, 116 Pac. 576.) Where a part of the mortgaged premises have been sold, the lien-holder is compelled to exhaust the part remaining unsold before proceeding against the conveyed property. (Mills v. Kelly, 50 Atl. 144.)

*Diefenderfer* and *Wakeman* and *W. K. Somers* for respondent.

The memorandum opinion of the trial Court clearly sets forth the principles involved and application of the facts in the record; an examination of the authorities relied upon by appellant will show that they are not applicable to the facts established by the evidence in this case; a purchaser's title is taken subject to mortgage, and is no better than that of the grantor. (27 Cyc. 1337); the purchaser merely took grantor's equity of redemption. (Miller v. Williams, 59 Pac. 740; Kelly v. Staed, 58 A. S. R. 648); a mere change of securities of equal dignity for a debt is not a novation of that debt or payment thereof. (19 R. C. L. 444; Dumell v. Terstegge, 85 Am. Dec. 470; Pollak Bros. v. Company, 35 L. R. A. (NS) 86; Lowe v. Blum, 43 Pac. 1063; Studebaker Co. v. Endom, 72 A. S. R. 489; State Bank v. Company, 86 A. S. R. 891; Terry v. Robbins, 83 A. S. R. 663; Fidelity Co. v. R. R. Co., 19 A. S. R. 858; Banta v. Vreeland, 82 Am. Dec. 269; Bachmann v. Hurtt, 184 Pac. 709; Bolln v. Stock Co., 196 Pac. 748.) Land charged with a debt can only be discharged therefrom by payment

or intentional release. (American Co. v. Helgesen, 122 Pac. 26.) A judgment not supported by the pleadings is fatally defective, and facts proved at the trial, but not set up in the pleadings cannot sustain a judgment. (23 Cyc. 816, 820.) An amendment presenting new issues should be denied. (31 Cyc. 401; Wright v. R. R. Co., 42 Atl. 440); new issues cannot be introduced by amendments, (31 Cyc. 401-403); an agency to sell lands must be strictly pursued, (2 C. J. 611); sale must be on terms subscribed by owner and for cash, unless otherwise authorized. (6 C. J. 616-618.) A sale for less than authorized by owner, is not binding. (Bush v. Cole, 28 N. Y. 261, 84 Am. Dec. 343; Morton v. Morris, (Tex.) 66 S. W. 94; McGrath v. Vanaman, (N. J.) 32 Atl. 686; Bloom v. Sawyer, (Ky.) 89 S. W. 204; Kearns v. Nickse, (Conn.) 10 Ann. Cas. 420.) The judgment of the trial Court should be affirmed.

*Raymond, La Fleiche* and *Kem* in reply.

Counsel for respondent have overlooked Sec. 5860 C. S. and decisions construing it. (Chicago B. & Q. R. R. v. Pollock, 93 Pac. 847.) The amendment requested by plaintiff was within the ruling; respondent has offered no argument upon the question of marshalling assets; respondent's repudiation of a solemn engagement has drawn an innocent party into litigation to his loss; he should not be permitted to consent to a sale of property, upon which he held a lien and thereafter repudiate the sale to his own advantage, and the loss of an innocent purchaser.

BLUME, Justice.

This is an action brought by W. J. Wood, plaintiff in the case below and appellant here, against E. C. Stevenson, defendant below and respondent here, to enjoin the defendant from foreclosing a mortgage given, as mentioned below, by one Andrews to respondent; also to declare said mortgage satisfied and for other equitable relief. The case was tried to the court without a jury; judgment was ren-

dered against the plaintiff, his petition dismissed, and he appeals.

The material facts are substantially as follows: On the 16th day of October, 1919, one Albert Andrews was the owner of lots 7 and 8 in block 3 of the First Addition in Moorcroft, Wyoming. On that date, probably to secure the purchase price of some sheep, he and his wife executed to the defendant E. C. Stevenson a mortgage on the said premises in the usual form securing an indebtedness of $8610.00, the correct amount of which, by reason of an error in the counting of sheep, was, however, in fact $8010.00. Appellant says that respondent continued to claim the full amount of $8610. The record, however, is silent as to that, or, at least, that fact does not appear plainly. On the same date the mortgagors aforesaid also executed to said Stevenson a chattel mortgage on some personal property, which was duly filed for record, and which was made to secure the same indebtedness above mentioned. Subsequently on April 27, 1920, said Andrews and wife entered into a written contract with the plaintiff Wood for the sale of the premises in question, free of incumbrance, for the consideration of $2750.00, of which $850.00 is acknowledged to have been paid, and requiring the payment of the balance of $1900, to be made July 1st, 1920. The respondent Wood knew at this time of the existence of the mortgage above mentioned. Considerable dispute appears in the record as to whether Stevenson consented to or authorized the foregoing contract. Appellant claims that he did; respondent denies this. To this matter we shall revert later. It is clear, however, that the appellant himself never had any talk with respondent in reference thereto, and relied wholly upon what Andrews told him. The contract was not acknowledged. Subsequent to the making of the contract above mentioned, and without knowledge apparently of the appellant, said Andrews and wife, totally ignoring the pre-

vious contract with respondent Wood, conveyed, by warranty deed, the premises in question to one Luther E. Pyle, said deed containing the following recital:

"This conveyance being made subject to a first mortgage lien in the amount of $8610.00 as shown by a certain mortgage deed of record in the records of the county of Crook, State of Wyoming, and wherein the above named grantors are mortgagors and E. C. Stevenson is mortgagee."

The evidence shows that this transaction took place with the full knowledge of the respondent Stevenson; that in fact it was brought about by his efforts, and he testified, in which he is corroborated by other testimony in the record, though disputed by other witnesses, that while he had some knowledge of a deal for the property between said Andrews and the appellant, said Andrews had stated, in effect, at the time of the making of the deed to Pyle, that the transaction with appellant had been terminated, and that he, the respondent, and Pyle had relied on such statement of Andrews. The sale price of the premises to Pyle was $3900.00, and Pyle in addition to that was to pay to the respondent the sum of $100.00 as commission. No money was, however, ever paid. The total consideration of the sale was to be paid over to the respondent, and accordingly the purchaser Pyle, in order to secure the purchase price, executed to the respondent a mortgage for $3900.00 on the property in question and some 320 acres of land in section 15 T 56 N. R. 69, the value of the land being about $3200.00 with a first lien of $800.00 against it. This mortgage was subsequently duly recorded. A credit of $3900.00 was thereafter endorsed on the Andrews note of $8610.00. The evidence is, however, clear, aside from the recital in the deed to Pyle, that it was then specially agreed that the original mortgage to respondent for $8610.00 should not be released.

Subsequently, about July 1st, 1920, the appellant herein commenced an action in the district court of Crook County against Albert Andrews, Sarah Andrews and Luther E. Pyle, setting forth his contract made on April 27th, 1920, that the defendant Pyle had knowledge thereof, and asking that the property above mentioned be conveyed to the complainant. Upon issues made, the cause was tried on October 20th, 1920, and a judgment rendered directing the said Pyle to make a conveyance of the said premises to complainant upon payment of the sum of $1900.00 to the clerk of court for the use and benefit of said Pyle, and that in default of such conveyance by said Pyle, the decree should stand as the equivalent thereof. The $1900.00 was paid as directed. It appears that the respondent had knowledge of this judgment at the time of its rendition.

Thereafter, about Nov. 6, 1920, Luther E. Pyle commenced an action in the district court of Campbell County, Wyoming, against the respondent herein, asking a cancellation of the indebtedness and the mortgage given by him for the purchase price of the property aforesaid, by reason of failure of consideration and referring to the decree of the district court of Crook County, above set forth. On the same day the respondent herein filed an answer in said action admitting the statements and allegations contained in the petition. A decree was entered in said action on November 6th, 1920, cancelling said mortgage, and directing respondent to release it of record, which he did on November 10, 1920, and the endorsement of $3900 on the Andrews note was also thereupon cancelled by respondent.

The original claim of plaintiff, as disclosed by the pleadings, was in substance as follows: That the defendant, by consenting to the sale of the property in controversy by said Andrews and wife to the said Luther E. Pyle, and by crediting on the indebtedness of the said Andrews the sum of $3900, being the amount of the purchase price of said premises agreed to be paid by said Pyle, and by accepting

from the said Pyle the mortgage given by him to defendant as hereinbefore mentioned, released the said Andrews mortgage in so far as affecting the Moorcroft property; further, that the said property was released from the operation of the mortgage by Pyle to defendant by reason of the voluntary release thereof by the defendant; that hence the defendant had no further interest in the Moorcroft property. Plaintiff also claimed that the security held by the defendant outside of the Moorcroft property was amply sufficient to pay his indebtedness and should first be exhausted before resorting to the Moorcroft property in order to satisfy the indebtedness due defendant. Plaintiff accordingly demanded, in his amended petition, that the said mortgage given by Andrews and wife be declared null and void and no lien upon the Moorcroft property, or, alternatively, that the court determine the balance due on the Andrews mortgage and decree the amount to be no more than $4210.00; that the value of the 320 acres of land included in the mortgage given by Pyle to defendant be determined and the amount credited on the Andrews mortgage; that the chattel mortgage be foreclosed and the amount realized therefrom also be so credited on the Andrews mortgage before foreclosing it as to the Moorcroft property.

The case was tried on June 6 and 7, 1921. Subsequently on June 25, 1921, plaintiff filed a motion to amend the amended petition by inserting therein an allegation to the effect that the respondent consented to and authorized the sale of the property in controversy by Andrews and wife to appellant and to the contract herein above mentioned made between said Andrews and wife and the appellant on April 27, 1920. No allegations to that effect were contained in the amended petition. The motion was denied on the grounds that the amendment was offered after the trial and after the submission of the cause and because "said motion is without merit." Appellant relies upon a rule of law that a purchaser of property from a mortgagor

takes his title free of the lien of a mortgage if the sale is made with the authority or consent of the mortgagee; and he further claims that the evidence in this case shows such authority and consent. We do not deem it necessary in this case to investigate the extent of the rule of law mentioned, for the reason that we are unable to agree with counsel for appellant that the fact is clearly shown as claimed, that the respondent consented to or authorized the sale of the property to appellant so as to release the former's mortgage. Appellant testified that the respondent knew, before the deed to Pyle was made, that Andrews agreed to sell the property to appellant. Andrews testified that the respondent agreed that the property might be sold for $3000; that $2250.00 should be turned over to respondent, and that "if I would sell it for that much money and pay him the money, he would give me credit for it," and "he would release the real estate." If this testimony stood uncontradicted in the record, it is at least doubtful that appellant's contention could even then be sustained. The property was sold by Andrews to appellant, not for $3000, but for $2750.00, and not for cash, but mostly for credit. The sum of $850.00 was recited in the contract to have been paid in cash, but even that amount was not so actually paid, but on the contrary it was agreed that this amount was to be satisfied by the payment of that sum by appellant to or for another creditor of Andrews, and leaving due, to be paid July 1, 1920, the sum of $1900.00, not sufficient to even pay the $2250.00 which Andrews testified the respondent had agreed to accept. Even though the appellant, if the consent above mentioned had been given, as claimed, would not be compelled to see that the proceeds were properly applied,—a point we do not decide—it would seem clear that he should not be a party to divert the proceeds from the person equitably entitled thereto. See Woodward v. Jewell, 140 U. S. 247, 11 Sup. Ct. 784, 35 L. ed. 478. In the case at bar he was clearly a party to diverting the difference between $2250.00 and $1900.00

away from appellant and applying it to uses other than contemplated in the alleged authorization of respondent. Even the $1900 was similarly taken away from its equitable owner, for appellant instituted a suit in the district court of ·Crook County wherein he was ordered to pay that sum to Pyle. He did not make Stevenson a party, so that the money might have been paid to him pursuant to the consent which appellant claims existed. The mere fact that respondent knew that Andrews was selling the property to appellant free of incumbrance could not bind respondent to release his mortgage. To hold that it could, would endanger the existence of every mortgage. The proposition is fundamental that a mortgagor has no power or authority, in the absence of an express delegation or reservation thereof, to affect or impair the lien of a mortgage by a contract relating to, or a sale of the mortgaged property. 19 R. C. L. 367. If the sale, free of incumbrance, was binding on respondent, it could only be on the theory that he constituted Andrews as his agent, giving the latter power to sell, and it is the general rule of law that the agent must sell on the terms prescribed and for the price authorized, and a sale otherwise made will not be binding on the principal even though it is on more favorable terms than those authorized. 2 C. J. 616. Further, an agent, unless authorized to the contrary or unless, perhaps, a custom or usage exists to the contrary, must sell for cash and not on credit. 2 C. J. 617, 618. It is very doubtful that the appellant has shown facts necessary to bring this case within these rules.

In any event the evidence of Andrews above mentioned is not at all uncontradicted. It is true that respondent testified that he was ''satisfied'' with the sale to appellant. But that statement must be taken in connection with his other testimony. Respondent testified that on June 11, 1920, he had no knowledge of any written contract between Andrews and appellant, except that he had heard of some deal or trade or attempted trade between them, but

that Andrews had stated that the deal had been terminated. Some of the further detailed testimony will appear from the following questions and answers:

"Q. You didn't care who owned it, you would have gone on and made the sale (to Pyle) just the same? A. I considered I had the first mortgage, and all I wanted was my money, and whoever got it would pay whatever was against it. Q. You didn't care who bought it? A. It didn't make any difference to me. Q. Now did you agree with Albert Andrews at any time that you would accept $2250.00 and release your mortgage given by him to you on lots 7 and 8 in block 3 of Moorcroft? A. No sir. Q. Did you ever have any conversation with Andrews at any time when he asked you if you would sell the property for him for $3000.00. A. I think he asked me to sell it for him once for $3000.00. Q. And did you at that time, or at any time, agree that he could sell the property and you would apply $2250.00 of the amount received on the note? A. No sir. Q. Did you ever have any understanding with Andrews at any time for $2250.00 you would release this mortgage you had against the property in question? A. No sir. Q. Before Andrews made this contract with Wood, isn't it a fact he talked with you about selling this property for cash to somebody not mentioned in name particularly? A. Yes sir, it was always for sale. Q. And you had an agreement with him if he sold it for cash and paid you the money you would release the mortgage? A. I had no agreement with him of any kind. I just listed it for sale. Q. If you sold it and got the cash for it, didn't you expect to credit the note of Andrews with the money and release the mortgage on the property? A. I certainly did. Q. And that was what you told Andrews you would do? A. I told him nothing of the kind. I didn't have any prospect of selling it at that time. It was just listed there for sale. Q. If you had sold it, however, for cash, and got the money, you would have given the pur-

chaser, or had a deed given to the purchaser free of your mortgage, wouldn't you? A. Well, if I had got money enough for it so I could afford to release it, I would. Q. It was placed in your hands for sale, wasn't it? A. Yes sir. Q. And you intended to sell it, if you could? A. At $4000.00. Q. And didn't you tell Andrews if he sold it for cash and gave you the money you would release the mortgage? A. I never said anything to him about it. Q. Didn't he have the right to sell it? A. I don't see why he shouldn't. Q. That would have been all right with you, if he had? A. If he got enough money for it. Q. Did you have any agreement with Andrews as to the amount he would sell it for? A. $4000.00 is what he wanted for it. Q. Is that the agreement you had with Andrews? A. I didn't have any agreement with him. Q. None at all? A. None at all. Q. When he told you that he had sold it for $2200.00 or whatever the price was that he was to sell it to Woods for, didn't you tell him he sold it too cheap? A. No. Q. What did you say to him. A. I never said anything to him about it. I was satisfied at that time. Q. Satisfied with the sale to Wood? A. Yes sir."

It is, we think, clear from the foregoing testimony on the whole, that respondent specifically denied any consent or authorization of the sale to appellant. This testimony, certainly, does not justify the claim that respondent lulled appellant into thinking that he, appellant, would receive the property free of incumbrance. Appellant did not even take the trouble to find out from Stevenson himself whether the mortgage would be released. He could not rely on the fact that the respondent "was satisfied" with the sale. In the first place, such "satisfaction" if it existed, was, according to the foregoing evidence, not communicated to any one, and further, it would seem clear that all that this means is that respondent had no objection as to who bought the property because, as he says: "I considered

that I had the first mortgage and all I wanted was my money, and whoever got it would pay whatever was against it.'' We shall not extend the discussion, but simply add, that in view of the conflict in the testimony and in view of the state of the record, we are not warranted in holding that the court was unjustified either in finding, as it evidently did, that no consent or authority on the part of the respondent to the sale to appellant had been shown, or that it abused its discretion in refusing the filing of the offered amendment above mentioned.

We shall now return to the other contentions made by appellant. He claims that the mortgage given by Andrews and wife to respondent was released by reason of the fact that respondent agreed to accept the mortgage given by Pyle. We are not able to see the force of this contention for the reason that it was specifically agreed at the time of the execution of the deed to Pyle, and the mortgage by Pyle to respondent, that the Andrews mortgage should remain in full force and effect. There is nothing in the record to convince us that respondent and Pyle did not act in good faith, and we can see no reason why the agreement above mentioned should be held invalid.

Appellant asked, on the theory of marshalling securities, that respondent, before proceeding with the foreclosure sought to be enjoined herein, should foreclose the chattel mortgage above mentioned. But that had already been done at the time of the trial of this case, and the net amount realized on that sale was approximately $3650.00. Judging from the amount claimed by respondent to be due him at the time of the trial, proper credit was no doubt given for the amount so realized. We do not think we should reverse this case for the mere reason that the court did not order the amount endorsed on the indebtedness.

Is, then, appellant entitled to additional credits? He claims credit for $2750 paid by appellant for the Moorcroft property by reason of the consent and authority given by Stevenson to Andrews to sell the property to appellant

free of incumbrance. We have already fully covered that matter, and from what we have said, it is clear that no such credit should be given. Nor do we think that the endorsement of the $3900.00 credit on the note was binding on the appellant. In the first place, it clearly appears from the agreement made that the Andrews mortgage should continue in force for its full amount, that the endorsement mentioned was not intended as an unconditional credit, but that the Andrews mortgage was still relied on for payment of this amount. In the second place, it was properly cancelled, at least to the extent that it was ultimately shown to be an improper credit. The credit was endorsed as a result of the $3900 mortgage given by Pyle to respondent. This mortgage was given in consideration of the deed from Andrews and wife to Pyle. In so far, at least, as that consideration failed, the credit as well as the mortgage were clearly entitled to be cancelled, more particularly in view of the fact that the failure of consideration was brought about by the suit of the appellant herein in the district court of Crook County, in which the deed to Pyle was cancelled and the title to the property decreed to be in the appellant. Certainly, appellant cannot complain of any action on the part of the respondent which was brought about by himself. Counsel, in their brief, maintain that the consideration did not fail for the reason that Pyle occupied the premises and because of the $1900 paid for him into court. The record is not clear that Pyle occupied the premises, and the matter of rental seems to have been raised in the case brought by appellant against Pyle. The $1900 was paid into court, and it is stated in the brief of appellant, not denied by respondent, that Pyle received it. But this payment, even when added to the rental of the house, which would be comparatively small, would not justify holding Pyle for the whole of the $3900 mortgage which he gave to appellant. At least as to the excess, over and above the benefit received by Pyle, there was

clearly a total lack of consideration, and he was clearly entitled to have his mortgage cancelled, at least as to such excess.

The question as to whether the Pyle mortgage should not have been cancelled, but should have been kept in force as to the $1900.00 only, which was paid by appellant to Pyle, that is, whether the consideration for the Pyle mortgage did not fail to that extent, and should, therefore, have been kept in force to that extent, are questions which have not been argued in the briefs, and we need not, therefore, express any opinion thereon. Judging from the evidence as to the value of the Moorcroft property, it would seem that even if all of the $1900.00 were credited on respondent's mortgage, the indebtedness still remaining would equal or exceed the value of that property. It may be that for this reason and for perhaps other reasons, not apparent in the record, these points were not argued, counsel possibly thinking that it would be useless to urge points of no practical benefit to them. We have, accordingly, felt impelled to decide the case, in accordance with the general rule, only upon the points urged and presented in the briefs.

It follows, from what we have said, that the judgment of the lower court should be affirmed, and it is so ordered.

*Affirmed.*

POTTER, Ch. J., and KIMBALL, J., concur.

NOTE—Headnotes Nos. 1, 2, 3, 7, see Mortgages, 27 Cyc. 1163, (1924 Anno.), 1335, 1390; (1924 Anno.), 1421; 4, 5, Agency, 2 C. J. Secs. 252, 253; 6, Appeal and Error, 4 C. J. Sec. 3047; 8, Appeal and Error, 3 C. J. 1587.