**BORNEL, INC., a corporation, Appellant (Plaintiff below),**

**v.**

**CITY PRODUCTS CORPORATION, Appellee (Defendant below).**

**No. 3594.**

Supreme Court of Wyoming.

Oct. 11, 1967.

Arthur Kline, of Kline & Tilker, Cheyenne, for appellant.

James O. Wilson and Richard F. Pickett of Loomis, Lazear, Wilson & Pickett, Cheyenne, for appellee.

Before HARNSBERGER, C. J., and GRAY, McINTYRE, and PARKER, JJ.

Mr. Justice GRAY delivered the opinion of the court.

Plaintiff, as lessor, commenced an action against defendant, as lessee, seeking to recover rental. due and to become due, together with other claimed charges, under a term lease. Defendant answered, denied liability, and moved for summary judgment. The motion was granted and plaintiff appeals from the judgment entered.

The record discloses that in May 1963 plaintiff, as developer of a shopping center at Cheyenne, Wyoming, identified as the "Wyo Plaza Shopping Center," entered into a lease with defendant covering certain premises located therein for a primary term of ten years and four months, said term commencing on October 1, 1963, in order to give plaintiff time to complete construction of the improvements upon the leased premises in keeping with the specifications called for by the lease. It was contemplated that the premises would be used for a "variety store" business under the name of "Ben Franklin," to be carried on by defendant or by the holder of a franchise contract entered into by defendant with some other person or entity. On or before July 16, 1963, defendant granted a franchise to four individuals by the name of Wells to operate a "Ben Franklin" store on the premises involved and on the date mentioned assigned the .lease to its franchise holders. Unfortunately a copy of that assignment is not in the record but plaintiff admitted that such an assignment had been made, and in the absence of any claim to the contrary we must assume it was made on the form attached to the lease, which will later be described. In the meantime, however, the Wellses formed a corporation under the name of "Wells Enterprises, Inc.," of which they were the sole officers and directors, for the apparent purpose of taking over the franchise and operating the store. In its first annual report dated June 28, 1963, the corporation listed cash in the sum of $500 as its only asset. To accomplish their purpose of operating the store as a corporate entity rather than as individuals the Wellses, acting in concert with defendant, terminated their franchise and on November 11, 1963, reassigned the lease to defendant. Although a copy of such reassignment is not in the record it is shown that such a copy was served on plaintiff February 17, 1964. It is further shown that the defendant, on the same day the lease was reassigned, again assigned the lease to the corporation in keeping with a franchise granted by it to the corporation. Some two years later default occurred in the payment of rent and other charges, and the within action was commenced on February 15, 1966.

The crux of the dispute between the parties centers around the effect, if any, of

the assignments above described upon the liability of defendant as the original lessee. Consequently we turn to the express provisions of the lease that are of primary concern in determining the effect of the assignments.

The lease · refers to the plaintiff as "Landlord" and to the defendant (Butler Brothers Division) as "Tenant." Article II(1) provides:

"That City Products Corporation may not intend permanently to own or operate the store to be located on the demised premises. Accordingly the Landlord specifically agrees that City Products Corporation shall have and is hereby given the unqualified right and privilege at its option of assigning this lease at any time with all the rights and obligations thereunder to an individual or person to whom City Products Corporation shall have issued its Franchise Contract, and that from and after the date of such assignment City Products Corporation shall forthwith be relieved of and from all liability or responsibility under this lease or any of its provisions. It is understood, however, that in the event of the termination, for any cause, of such Franchise Contract issued to such assignee, or upon termination of the Assignee's rights under this lease whether by default, failure to exercise option to renew or for whatever cause, City Products Corporation shall have the option of reassuming this lease together with all rights including the rights under this paragraph (1) and all obligations arising thereunder effective from and after the effective date of any such reassumption.

"It is further understood and agreed that any such assignment shall be made, with notice to the Landlord, upon the terms and conditions stated in the form of assignment attached hereto marked Exhibit C and by this reference made a part hereof, and that the respective rights of the Landlord, City Products Corporation, and the Assignee under such assignment shall be as specifically provided in such form

of assignment, it being also expressly agreed that City Products Corporation's right to reassume shall and may not be prejudiced by failure of Landlord or Assignee to notify City Products Corporation of the happening of any event which shall give City Products Corporation an option to reassume hereunder."

The form of the assignment referred to above as Exhibit C, after reciting that defendant transfers all of its right, title and interest in the lease, provides in part:

"Notwithstanding any provision in said Lease to the contrary with respect to the term thereof, this assignment is made subject to, and the Assignee agrees to the condition that the term of said Lease and all rights to Assignee thereunder shall terminate in the event of and upon termination, for whatever cause, of the Franchise issued to assignee pursuant to Franchise Contract dated _____, 19__, or any renewal or extension thereof, between said Assignee, and BUTLER BROTHERS, provided, however, that if, upon termination of said Franchise, said BUTLER BROTHERS shall not exercise its option to reassume the obligations of the lease for the unexpired term thereof, as hereinafter provided, then and in that event said Assignee shall be and remain liable to perform the covenants of tenant under said Lease and shall be entitled to all rights and privileges thereunder, excepting only the right to conduct a business under the name "_____ STORES" or any name similar thereto.

\* \* \* \* \* \*

"In the event of the termination of the term of the Lease by the termination of the Franchise Contract as hereinabove and in said Lease provided, or for any other cause including failure of assignee to exercise renewal options, if any, in said Lease contained, BUTLER BROTHERS shall have the option, by giving notice to the Landlord and Assignee within ninety (90) days after the date of termination of said Franchise Contract or of notice to it of the termination of As-

signee's rights under the Lease for any other cause, including failure to renew under the option provisions, if any, to reassume said Lease together with all rights and obligations thereunder for the balance of the term in said Lease provided, it being expressly understood that BUTLER BROTHERS shall be under no obligation to exercise such option or to reassume any of the obligations under said Lease."

Article III(c) provides:

"This lease and demise and the covenants and agreements herein contained shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns, except that the rights granted under paragraphs (1), (m), and (n) of Article II hereof, may be exercised only by City Products Corporation. No assignee or subtenant hereunder may further assign this lease or sublet the premises, with the single exception that any assignee may reassign this lease to City Products Corporation."

In support of its claim that the trial court erred in entering a summary judgment plaintiff contends, in substance, (a) that the provisions of Article III(c) prohibited defendant from reassigning the lease to the corporation and thus defendant, as assignee of the Wellses, was bound by the obligations of the lease, (b) that the defendant failed to exercise its option to reassume the lease after the first assignment and as a consequence the provisions of Article II(1) expressly granting the right to defendant to assign and relieve itself of liability were inoperative, and (c) that in any event the language of the lease clearly shows the intention of the parties to bind the defendant for the full term but that should this court disagree then plaintiff, because of ambiguity in the lease, was entitled to present extrinsic evidence disclosing such an intention.

Defendant counters with the contention that the provisions of the lease are clear and unambiguous and disclose the intention of the parties to grant to defendant the un-

qualified right at any time to relieve itself of liability under the lease by assignment to its franchise holder irrespective of whether or not defendant exercised its option to reassume the lease prior to a second assignment.

In giving our attention to the contentions of the parties let us first say with respect to plaintiff's contention (c) that in addition to the provisions of the lease set forth above we have examined with care the remaining complex and numerous provisions of the lease and the language therein used. We fail to discern, however, the ambiguity claimed by plaintiff that would warrant resort to extrinsic evidence in ascertaining the intention of the parties.

Consequently, in construing the lease and in determining the intention of the parties as gleaned from the language used, we turn primarily to the context of the lease as a whole, Ayres Jewelry Co. v. O. & S. Building, Wyo., 419 P.2d 628; Fuschs v. Goe, 62 Wyo. 134, 163 P.2d 783, 791, 166 A.L.R. 1329, keeping in mind "The situation of the parties when the contract was made, its subject-matter, and the purpose of its execution," Pacific-Wyoming Oil Co. v. Carter Oil Co., 31 Wyo. 314, 226 P. 193, 197, rehearing denied 31 Wyo. 452, 228 P. 284.

In so doing we are persuaded there is no merit in plaintiff's argument under (a) or (c) that under any eventuality the parties intended to bind defendant for the full term of the lease. A cursory reading of the clear and express provisions of the lease set forth above readily discloses an intention to the contrary and no grave inconsistency between those provisions and other provisions of the lease are apparent. Furthermore, even though some slight inconsistency might be implied, this court will not assume that the parties intended any such result. Covey v. Covey's Little America, Wyo., 378 P.2d 506, 511. As we view it the only reasonable interpretation which can be made of the lease as a whole is that 'the parties intended, in the ordinary course

of affairs, to substitute as tenant the assignee-franchise holder of the defendant with the exception that the assignee could not further assign other than to the defendant as provided in Article III(c).

Thus, had defendant within the 90-day period from November 11, 1963, served notice upon the plaintiff that it had exercised its option to reassume the lease from its first assignee, and had again assigned to the corporation, we doubt the case would be here. There was no claim below that the lease was otherwise in default at the time or that there was fraud, bad faith, or overreaching in either of the assignments.

█ What then is the result of defendant's failure to exercise its option to reassume the lease when the franchise to the Wellses was terminated and the lease reassigned to the defendant? Did such failure as a matter of law or under the contract reimpose liability upon the defendant for the payment of rent and other charges for the full term of the lease as plaintiff contends? We think not. The argument, though plausible, rests upon unfirm ground. For purposes of its argument plaintiff admits that there was privity of contract between plaintiff and the Wellses as a result of the first assignment with the exception of the rights afforded by Article II(1), which it says were personal covenants not running with the land and could be exercised only by the defendant. It is then advanced that the Wellses, not having received the benefit of assigning without further liability under the lease, could not by the assignment made to defendant confer such benefit upon the defendant and as a consequence the defendant could not relieve itself of liability for the full term without reassuming the lease and then exercising its rights under Article II(1).

For purposes here it will be assumed, as plaintiff agrees, that there was privity of contract, with the exception mentioned, between the Wellses and the plaintiff as a result of the first assignment. It will also be assumed plaintiff is correct in its assertion that the Wellses could assign only those rights that they possessed. The flaw in plaintiff's argument, however, that the defendant in taking such assignment became obligated for payment of rent for the full term, is simply this: There is nothing in the record to show that the defendant, as assignee, assumed the obligations of the lease. Under those circumstances there was no privity of contract between the plaintiff and defendant flowing from that assignment. The only relationship existing between them was privity of estate or in other words performance of the covenants of the lease running with the land of which the payment of rent was one. When the defendant assigned the lease to the corporation it discharged any further liability for the payment of rent and the other charges for which plaintiff sued.

█ The law in that respect is well settled. The rule is clearly stated in Leitch v. New York Cent. R. Co., 388 Ill. 236, 58 N.E. 2d 16, 18–19, 155 A.L.R. 835:

"For example, it has long been the law of Illinois that if the assignee of a lease does not assume the obligations thereof, then, as between the original lessor and such assignee there is privity of estate but not privity of contract; and the assignee is liable for rent only while such privity of estate continues, and may terminate further liability by assigning the lease and going out of possession. On the other hand, if there is an assumption of the lease obligations, then privity of contract also results and the assignee cannot shake off his contractual liability by making an assignment or going out of possession. * * *"

See also Mohonk Realty Corporation v. Wise Shoe Stores, Inc., 2 Cir., 111 F.2d 287, 288, certiorari denied 311 U.S. 654, 61 S.Ct. 47, 85 L.Ed. 418; Edwards v. Altmayer, 31 Ala.App. 459, 18 So.2d 471, 473; Bonfils v. McDonald, 84 Colo. 325, 270 P. 650, 654; Jenkins v. John Taylor Dry Goods Co., 352 Mo. 660, 179 S.W.2d 54, 58, 60; and Packard-Bamberger & Co. v. Maloof, 89 N.J. Super. 128, 214 A.2d 45, 46.

■ Of course, it must be conceded that liability for payment of rent by the defendant did theoretically attach on November 11, 1963, when it took the assignment. Nevertheless, that liability ceased when defendant again, either simultaneously or on that same day, assigned the lease to the corporation. Consequently, and keeping in mind that the law—absent a statutory or contractual provision—knows no fractions of a day, the extent of defendant's liability to the plaintiff at best was in effect for one day only and any obligation thus accruing was assumed and apparently paid by the corporation.

For the reasons stated the judgment is affirmed.

Affirmed.