657 P.2d 1102

**BONANZA MOTORS, INC.,**
**Plaintiff-Respondent,**

v.

**Lloyd J. WEBB, individually; and Lloyd J. Webb, J. Riley Burton, Monte B. Carlson, Kenneth L. Pedersen and Robert C. Paine, a partnership, Defendants-Appellants,**

**and**

**Robert C. Nora, Defendant.**

No. 13828.

Court of Appeals of Idaho.

Feb. 3, 1983.

Petition for Review Denied
March 29, 1983.

Marvin M. Smith, Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, for defendants-appellants. Lloyd J. Webb, of the firm, on oral argument.

Jack S. Gjording, Elam, Burke, Evans, Boyd & Koontz, Boise, for plaintiff-respondent. Randall A. Peterman, of the firm, on oral argument.

BURNETT, Judge.

Fortunate is the lawyer who has never become ensnared in the obligations of a client. The law firm of Webb, Burton, Carlson, Pederson & Paine was not so fortunate in its representation of a client named Robert C. Nora.

The firm obtained a favorable judgment for the client in a lawsuit against an insurance company. The client owed money to a creditor, Bonanza Motors, Inc., on a delinquent promissory note. To obtain forebear-

ance against judgment on the note, the client gave the creditor a partial assignment of his interest in funds to be received from the action against the insurance company. The assignment instrument directed the law firm to pay the creditor directly when funds were received. A copy of the instrument was furnished to, and accepted by, the law firm. The funds later arrived in the form of a draft payable jointly to the client and the firm. The client paid the firm its fee for legal services and requested the firm to endorse the draft. The firm did so without restriction and relinquished the draft—either disregarding or overlooking the assignment. The client then negotiated the draft without paying the creditor. The creditor sued on the assignment and obtained summary judgment against the law firm in the magistrate division of the district court. On appeal, the judgment was affirmed by the district court.

In this further appeal, the law firm raises three issues: (1) Did the firm owe the client an obligation which gave rise to an assignable right? (2) Did the assignment remain binding upon the firm after the client paid the firm its fee and requested endorsement of the draft? (3) Could the law firm ethically have declined to comply with the client's request? Because we answer each question in the affirmative, the judgment in favor of the creditor is upheld.

In an appeal from summary judgment, our function is to determine whether there are genuine issues of material fact, and whether the prevailing party was entitled to judgment as a matter of law. I.R.C.P. 56(c). The record in this case discloses no disputed facts. Accordingly, we focus on whether the creditor was entitled, as a matter of law, to judgment against the law firm.

■ First we consider the question of whether the client had an assignable right. The assignment actually embraced two elements—the client's underlying right to recover from the insurance company, and the client's right to disbursement of funds by the law firm when proceeds of the action were received. Regarding the first right, it is settled in Idaho that a cause of action, or

"thing in action," may be assigned. I.C. § 55–402. *See Whitehead v. Van Leuven,* 347 F.Supp. 505 (D.Idaho 1972); *Casady v. Scott,* 40 Idaho 137, 237 P. 415 (1924). Regarding the second right, it appears to be well established that an attorney-client relationship generally imposes upon the law firm a contractual obligation, analogous to that of an agent or trustee, to account for funds received in the course of legal representation and to pay the client any sums to which he may be entitled. *See* cases cited in 7A C.J.S. *Attorney and Client* § 247 (1980). Nothing in the record negates the existence of this general obligation in the present case.

■ In its ably written briefs, the law firm has contended that the obligation to disburse funds did not give rise to an assignable right, because the firm owed the client no "debt" when notice of the assignment was given. However, whether the law firm's obligation to its client constituted a "debt" is not the dispositive question. Subject to restrictions not asserted here, modern contract law recognizes the assignment of rights to performance of obligations other than "debts." *See generally* J. Calamari & J. Perillo, the Law of Contracts §§ 18–7 et seq. (1977). The firm also cites numerous authorities for the proposition that an assignment fails if the purported obligor is not, in fact, obligated to the assignor. The proposition is correct but inapposite to this case. From the outset of the attorney-client relationship, the law firm was obliged to disburse, and the client had a right to receive, any funds to which he was entitled.

■ The fact that performance of this obligation occurred later, when proceeds of the lawsuit arrived, does not defeat the assignment. With exceptions not applicable in this case, a right to future performance of an obligation may be assigned. *See* Restatement (Second) of Contracts § 321(1) (1979); 3 S. Williston, A Treatise on the Law of Contracts § 413 (W. Jaeger 3d ed. 1960). Neither is the assignment defeated by the fact that the client's right to receive money necessarily was conditioned upon the availability of proceeds from the action against the insurance company. An assign-

ment properly may relate to a conditional right which is adequately identified. *See* Restatement, *supra,* § 320; 4 A. Corbin, Corbin on Contracts § 874 (1951).

The law firm has argued that the insurance company was the true obligor in this case. It may be freely conceded that the insurance company owed a debt; but we are not persuaded that this altered the status of the law firm as an obligor to its client, with respect to funds received. We conclude that the law firm owed the client an obligation which gave rise to an assignable right.

■ We turn next to the question of whether the client's actions, in paying the law firm its fees and requesting endorsement of the draft, relieved the law firm of its duty to the creditor-assignee under the assignment. Notice of an assignment puts the obligor on guard. The obligor is liable to the assignee if the funds assigned are subsequently paid to the assignor in violation of the assignment. *E.g., Chapman v. Tyler Bank & Trust Co.,* 396 S.W.2d 143 (Tex.Civ.App.1965); *see generally* 4 A. Corbin, *supra,* § 890. Once a valid assignment has been made, the assignor cannot cancel or modify the assignment by unilateral action without the assent of the assignee; nor may he defeat the rights of the assignee. *E.g., Wymer v. Wymer,* 16 B.R. 497 (Bkrtcy. 9th Cir.1980); *Shore v. Shore,* 71 Cal.App.3d 290, 139 Cal.Rptr. 349 (1977). After notice of the assignment has been given to the obligor, the assignor has no remaining power of release. 4 A. Corbin, *supra,* at 577.

■ In the present case, the client acted unilaterally in requesting that the draft be endorsed and delivered to him. The record discloses no contention that the creditor had consented to such treatment of the funds assigned. Accordingly, we hold that the client's request did not absolve the obligor law firm of its contractual duty to honor the assignment.

■ Finally, we consider whether the law firm ethically was required to acquiesce in the client's request. Ethical standards for Idaho lawyers and law firms are established by the Code of Professional Responsibility adopted by the Idaho Supreme Court. The

law firm contends that it was constrained to endorse and to relinquish the draft, upon the client's request, under DR 9–102(B)(4). This disciplinary rule requires an attorney to "[p]romptly pay [to the client] ... as requested ... the funds ... in the possession of the lawyer *which the client is entitled to receive.*" (Emphasis supplied.) In our view, the rule does not shield the law firm from responsibility for failing to transmit the assigned funds to the creditor-assignee. The client had dealt with those funds by a valid and enforceable assignment. He was not "entitled to receive" the funds assigned.

■ The firm also argues that I.C. § 3–301(5) required it to pay all funds to the client. However, this statute provides for discipline of an attorney who fails "to pay over ... money ... belonging to his client ... received in ... settlement of any claim." Assuming, without deciding, that this statute remains in force notwithstanding adoption of the Code of Professional Responsibility, it still does not require a law firm to pay a client money to which he is not entitled. It simply requires payment of money "belonging" to the client.

Our view is parallel to that expressed in *Brinkman v. Moskowitz,* 38 Misc.2d 950, 238 N.Y.S.2d 876 (N.Y.App.Term 1962). In that case a New York appellate court held that a lawyer who had notice of an assignment by the client, but who disbursed settlement proceeds in disregard of the assignment, was liable to the assignee. The law firm in this case argues that *Brinkman* is distinguishable because the lawyer there had full control of the funds, while the law firm here was one of the parties to a jointly payable draft. This is a distinction without a difference as far as the assignment is concerned. The firm still was required to honor the assignment. The jointly payable draft simply altered the available means of doing so. Among other alternatives, the firm could have withheld its endorsement unless the client agreed to proper distribution of funds through the firm's trust account. In any event, the firm was not ethically bound to give the client more than the sum to which he was entitled. We conclude that the law firm is liable to the creditor for funds relinquished to the client in violation of the assignment.

■ The creditor has requested an award of attorney fees on appeal under I.C. § 12–120(2) or § 12–121. Section 12–120(2) provides, in part, for the award of attorney fees to the prevailing party in a civil action brought to recover on an open account or contract relating to the purchase and sale of goods. The creditor's cause of action against the client in this case may have related to a purchase and sale of goods; but the cause of action against the law firm did not. That cause of action was founded solely upon assignment of proceeds from a lawsuit. Such an action is not covered by § 12–120(2). Accordingly, we decline to award attorney fees under this section.

■ With respect to § 12–121, an award of attorney fees on appeal is appropriate only if the appeal was brought, pursued, or defended frivolously, unreasonably, or without foundation. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979); I.R.C.P. 54(e)(1). We have held that such an award will not be made where a decision is based upon legal authorities from other jurisdictions, and the appeal has helped to develop Idaho case law on the subject. *Shelton v. Boydstun Beach Ass'n,* 103 Idaho 818, 641 P.2d 1005 (Ct.App. 1982). This case has been characterized by an interface of assignment law with the legal and ethical duties created by the attorney-client relationship. It has generated issues of first impression in Idaho. We have relied largely upon authorities from other jurisdictions to reach, and to support, our decision. Consequently, we award no attorney fees on appeal.

The order of the district court, upholding the judgment in the magistrate division, is affirmed. Costs to respondent, Bonanza Motors, Inc.

WALTERS, C.J., and SWANSTROM, J., concur.