CHARTER THRIFT AND LOAN, a
Utah corporation, Appellant
(Plaintiff),

v.

Brec COOKE, d/b/a Stagecoach
Enterprises, Appellee
(Defendant),

George E. Cooke Associates, Inc., a Wyoming corporation, and Rocky Mountain
Equity Corporation, (Defendants).

No. 88–133.

Supreme Court of Wyoming.

Dec. 13, 1988.

Peter F. Moyer, Jackson, for appellant.

Floyd R. King of King & King, Jackson,
for appellee.

Before CARDINE, C.J., and
THOMAS, URBIGKIT, MACY, and
GOLDEN, JJ.

MACY, Justice.

Appellant Charter Thrift and Loan (Charter) sought judgment against appellee Brec
Cooke, d/b/a Stagecoach Enterprises
(Cooke) for amounts owed on a promissory
note secured by a collateral assignment of
a lease and a trust deed with an assignment of rents. At the conclusion of a
bench trial, the district court directed judgment for Cooke.

We affirm.

Charter presents the following issue:

Was a directed verdict properly entered by the trial court against the appellant, where a landlord assigned its leasehold rights to the appellant as security
for a loan, and the appellee as tenant
refused to pay rent to appellant following default on the loan?

George E. Cooke Associates, Inc. (Associates) (a closely held family corporation
whose stockholders are George Cooke, his
wife, Marina, and his son, Brec) owned as
its sole asset a bar/restaurant in Wilson,

Wyoming, known as the Stagecoach Bar. On January 10, 1985, Associates leased a portion of the bar to Cooke for a term of five years. The lease stated that the leased area (basically the kitchen area) was to be used by Cooke for conducting a food service business within the bar.

On January 17, 1985, Associates obtained a $40,000 loan from Charter. As part of the loan transaction, Associates executed three documents: (a) a collateral assignment of a lease giving to Charter all the beneficial interest in the lease between Associates and Cooke; (b) a commercial note in the amount of $40,000; and (c) a trust deed with an assignment of rents conveying to Charter, in trust, the lease between Associates and Cooke.

On February 19, 1985, Charter recorded the trust deed with the Teton County Clerk, attaching the collateral assignment of lease as well as the lease itself. Charter conceded that no other filing of its security interest in the lease was made in Wyoming.

After the December 4, 1985, payment, Associates ceased making payments on the loan from Charter, having made regular payments since March 19, 1985. On February 5, 1986, Associates sold the bar to Stagecoach Enterprises, Inc., a corporation whose sole stockholder is Cooke. The lease between Associates and Cooke was then verbally cancelled, and a new lease on the kitchen portion of the bar was entered into between Stagecoach Enterprises, Inc. and another corporation called First Stage, Inc. Cooke and Juline Christofferson owned one-half of the stock in First Stage, Inc. By early 1987, Cooke and Christofferson purchased all the stock in First Stage, Inc. and cancelled the new lease.

The record further demonstrates that no payments were made on Associates' indebtedness to Charter from December 4, 1985, until August 12, 1986. Cooke negotiated with Charter to assume Associates' indebtedness, but those negotiations ultimately failed because Charter insisted that, as part of the assumption, Cooke give to Charter a mortgage on the bar, which he refused to do. From August 1986 through the end of October 1986, while negotiating

with Charter, Cooke paid a total of $9,000 to Charter on Associates' debt.

On May 18, 1987, George E. Cooke and his wife, Marina Cooke, were discharged from their debts in a Chapter 7 bankruptcy proceeding in the United States Bankruptcy Court for the District of Wyoming. As a result of this bankruptcy, Cooke was the only source from which Charter could expect payment on the indebtedness.

By stipulation, the parties agreed that the only property encumbered by the trust deed with assignment of rents was the rentals payable under the lease between Cooke and Associates and that *"[t]he parties to this proceeding all had proper notice of said assignment of rents referred to in the Trust Deed, and as between those parties* the 'rental stream' was duly encumbered as security for the * * * loan." (Emphasis added.) Cooke also contended that on April 19, 1985, before he had notice of the assignment of the lease, he made an advance payment of rent to Associates in the amount of $17,000.

We will not set out in detail the claims made by Charter in its complaint, because by the time of trial the issues had been simplified to such an extent that the only claim being pursued by Charter was one premised on the theory that Associates (as landlord) and Cooke (as tenant) could not alter the lease to the detriment of Charter.

■ In a nonjury trial, where the district court dismisses the plaintiff's suit at the end of the presentation of the plaintiff's evidence, as occurred in this case, this Court is compelled to consider the evidence as it would have had the district court directed a jury verdict. *Caribou Four Corners, Inc. v. Chapple–Hawkes, Inc.,* 643 P.2d 468 (Wyo.1982); *Fuller v. Fuller,* 606 P.2d 306 (Wyo.1980). We must view that evidence most favorably to the plaintiff, giving him the benefit of all reasonable and legitimate inferences that may be drawn therefrom. *Willmschen v. Meeker,* 750 P.2d 669 (Wyo.1988); *Osborn v. Manning,* 685 P.2d 1121 (Wyo.1984). The approved approach to be used by a trial judge

in considering a motion under W.R.C.P. 41(b)(1)[1] is:

> When plaintiff's proof fails in some aspect, the motion must be granted. When plaintiff's evidence is overpowering, the trial judge's work is easy and the motion should be denied. When the plaintiff has presented only a prima facie case founded on unimpeached evidence, the district judge should not grant the motion, even though he sits in the stead of a jury as the trier of facts and may not feel at that juncture of the trial that plaintiff has sustained his proof burden.

*Kure v. Chevrolet Motor Division*, 581 P.2d 603, 606 (Wyo.1978). See also *Arbenz v. Bebout*, 444 P.2d 317 (Wyo.1968).

Charter's burden in this appeal is to demonstrate to this Court that it presented a prima facie case in the district court. A prima facie case is made if at least some evidence is presented on every essential element of the cause of action. *Osborn*, 685 P.2d 1121; *Caribou Four Corners, Inc.*, 643 P.2d 468. Charter sets out the facts of the case but beyond that makes no cogent argument and cites no pertinent authority to support the proposition that it made a prima facie case before the district court. Charter did not present a coherent theory of its case to the district court, and that failing continues before this Court.

■ Even though Charter's burden is a relatively light one in view of the W.R.C.P. 41(b)(1) dismissal, we must follow our wellsettled rule that the judgment of the trial court is presumed to be correct and that one appealing therefrom must make an affirmative showing of error. *Gregory v. Sanders*, 635 P.2d 795 (Wyo.1981), appeal after remand 652 P.2d 25 (Wyo.1982); *Spriggs v. Copenhaver*, 459 P.2d 203 (Wyo. 1969). This Court cannot be expected to make an independent investigation to find some error upon which an appeal could possibly rely. *Id.* Our review of this case is made difficult because no findings of fact or conclusions of law as required by W.R.C.P. 41(b)(1) were made by the district court, either formal or informal. *Kure*, 581 P.2d 603; 9 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 2371 at 220 n. 41 (1971). Charter has raised no issue in this regard, and we do not view it as one appropriate for consideration sua sponte. See *White v. Fisher*, 689 P.2d 102 (Wyo.1984).

■ In an effort to demonstrate its prima facie case, Charter cites *Slane v. Polar Oil Company*, 48 Wyo. 28, 41 P.2d 490 (1935), and 51C C.J.S., Landlord and Tenant § 42c (1968), for the proposition that recordation of the collateral assignment of the lease with the Teton County Clerk was the proper method for perfecting its rights under the assignment. Whether or not this is correct as a matter of law is largely irrelevant because the parties agreed, and it became the rule of this case, that all parties had notice of the assignment and agreed that the rents were encumbered as security for the loan. Presuming, as we must, that the district court's judgment is correct, Charter's case did not fail on the basis that the assignment was not properly recorded.

Charter also cites *Bornel, Inc. v. City Products Corporation*, 432 P.2d 489 (Wyo. 1967), for the proposition that the terms of the particular documents are of primary concern in determining the effect of the collateral lease assignment. Charter fails to recite any specific language from the documents that gives it an interest in the rents from Cooke, and it concludes that Associates had the right to collect those rents only so long as it was not in default on the loan. Again, we do not necessarily disagree but note that this argument goes only to a theory that Charter had some

---

1. W.R.C.P. 41(b)(1) provides in pertinent part: After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).

kind of mortgage it could have foreclosed upon. At the time of trial, Charter did not seek foreclosure on the trust deed or on any other mortgage interest it may have had.

For the proposition that a landlord and tenant may modify or augment a leasehold in the ordinary course of business but that in so doing they may not adversely affect or prejudice the right of an assignee, Charter cites *Pheister v. Ogden Smelting & Refining Mills, Inc.*, 364 P.2d 1078 (Wyo. 1961), and 51C C.J.S., supra at §§ 42 and 51. These authorities pertain almost exclusively to actions founded on a mortgage theory and, to a large extent, to mortgages of leases made by the lessee rather than the lessor. As Charter clearly did not proceed on a mortgage theory in the district court, these authorities do not and cannot serve as justification in demonstrating that the district court committed error when it directed judgment for Cooke.

Finally, Charter relies upon *Wood v. Stevenson*, 30 Wyo. 171, 217 P. 953 (1923), which is a case dealing only with mortgage law. Charter asserts that it is analogous to the circumstances of this case but does not develop that analogy, and we do not perceive its applicability.

In conclusion, we hold that Charter failed to carry its burden of showing that it presented a prima facie case that prevented the district court from entering judgment for Cooke at the close of Charter's case.

AFFIRMED.

URBIGKIT, J., filed a dissenting opinion.

URBIGKIT, Justice, dissenting.

I dissent. I differ from the majority's interpretation of the evidence and law which is clouded by the fact that Charter

Thrift and Loan's (Charter) attorney could have been more zealous in his representation both at trial and on appeal. I refuse to lose sight of the forest for the trees. In a directed verdict[1] analysis under W.R.C.P. 41(b)(1), the entire evidence must be viewed most favorably to the plaintiff with the benefit of all reasonable inferences going to the plaintiff. *Willmschen v. Meeker*, 750 P.2d 669 (Wyo.1988); *Fuller v. Fuller*, 606 P.2d 306 (Wyo.1980); *Shook v. Bell*, 599 P.2d 1320 (Wyo.1979). While the majority cites the correct rule, the spirit and substance of this principle is abrogated by the majority's application to this fact situation. Clearly, a prima facie case of assignment and impairment by an original lending transaction participant was shown. Unquestionably, the impairment was for the participant's subsequent advantage which totally eliminated the security interest to which he agreed.

The backdrop of the parties' relationships to one another cannot be so casually disregarded as occurs in the majority. Although the majority portrays Brec Cooke as an innocuous participant in this arrangement, he was much more deeply involved with the underlying financial structure of George E. Cooke Associates (Associates) as owning five percent of the closely held family corporation. Moreover, Brec Cooke was aware that Associates was heavily encumbered with the lease being the only real security for the Charter loan which made possible the expansion of the bar property. Overall, an issue that permeates this entire financial transaction is that there were no difficulties in collecting on the note until the father, George Cooke, who worked for Charter,[2] was fired. That job termination precipitated first time collection difficulties and engendered wrongful termination counterclaim interests in the present suit.

---

1. Actually, as the case was tried without a jury, this should be a motion to dismiss because there would be no verdict. See *Willmschen v. Meeker*, 750 P.2d 669, 672 n. 3 (Wyo.1988). However, the directed verdict analysis becomes important in determining how this court will view the evidence. *Fuller v. Fuller*, 606 P.2d 306 (Wyo. 1980).

2. Initially, the counterclaim was that Charter had wrongfully terminated George Cooke. However, the answer was later amended to reflect that George Cooke really worked for Citizens Bankshares, Inc., the parent corporation of the plaintiff, which became tied into this case through the alleged commingled operation of the two companies to effectively result in one corporate structure.

With the parties' interrelationships put in proper focus, the law that was applied must be considered.

Clearly, the majority as well as the district court, confused the assignment and mortgage aspects of this case. The majority states:

> Charter also cites *Bornel, Inc. v. City Products Corporation*, 432 P.2d 489 (Wyo.1967), for the proposition that the terms of the particular documents are of primary concern in determining the effect of the collateral lease assignment. Charter fails to recite any specific language from the documents that gives it an interest in the rents from Cooke, and it concludes that Associates had the right to collect those rents only so long as it was not in default on the loan. Again, *we do not necessarily disagree but note that this argument goes only to a theory that Charter had some kind of mortgage it could have foreclosed upon.* At the time of trial, Charter did not seek foreclosure on the trust deed or on any other mortgage interest it may have had. [Emphasis added.]

The fallacy is the limiting of this exchange to a mortgage situation. This arrangement can be an assignment of conditional rights. Restatement (Second) of Contracts § 320 (1981).[3] See *In Re Allied Products Co.*, 134 F.2d 725 (6th Cir.), cert. denied sub nom. *Barnett v. Maryland Casualty Company*, 320 U.S. 740, 64 S.Ct. 40, 88 L.Ed. 438 (1943); *Rockmore v. Lehman*, 129 F.2d 892 (2d Cir.1942), cert. denied 317 U.S. 700, 63 S.Ct. 525, 87 L.Ed. 559 (1943); *In Re New York, N H & H R Co.*, 25 F.Supp. 874 (D.Conn.1938); and *Bonanza Motors, Inc. v. Webb*, 104 Idaho 234, 657 P.2d 1102 (1983). The record discloses that during Charter's case in chief, this assignment theory was advanced twice, and all parties stipulated that the "rental stream" was encumbered as security for the loan to Charter. This stipulation is further relevant concerning the sale by the assignor of the premises. There is sound law that once notice is given of the assignment to the obligor, Brec Cooke, the assignor cannot defeat the assignee's rights nor specifically cancel the assignment without the assignee's consent.

> Notice of an assignment puts the obligor on guard. The obligor is liable to the assignee if the funds assigned are subsequently paid to the assignor in violation of the assignment. E.g., *Chapman v. Tyler Bank & Trust Co.*, 396 S.W.2d 143 (Tex.Civ.App.1965); see generally 4 A. Corbin, supra, [Corbin on Contracts], § 890 [1951]. Once a valid assignment has been made, the assignor cannot cancel or modify the assignment by unilateral action without the assent of the assignee; nor may he defeat the rights of the assignee. E.g., *Wymer v. Wymer*, 16 B.R. 497 (Bkrtcy. 9th Cir.1980); *Shore v. Shore*, 71 Cal.App.3d 290, 139 Cal. Rptr. 349 (1977). After notice of the assignment has been given to the obligor, the assignor has no remaining power of release. 4 A. Corbin, supra, at 577.

*Bonanza Motors, Inc.*, 657 P.2d at 1104. See also J. Calamari and J. Perillo, The Law of Contracts § 18–17 (3d ed. 1987) and Restatement (Second) of Contracts, supra at § 338(1). Cf., *Frankford Trust Co. v. Stainless Steel Services, Inc.*, 327 Pa.Super. 159, 475 A.2d 147, 149–50 (1984), where lessee, obligor, had a meritorious defense against lessor's assignee when lessee had not been notified of the assignment. The timing of the notice to Brec Cooke may be uncertain, but the fact that notice was received cannot be denied and is evidenced by the stipulation. Further, it is

---

3. Restatement (Second) of Contracts, supra at § 320 provides:

   The fact that a right is created by an option contract or is conditional on the performance of a return promise or is otherwise conditional does not prevent its assignment before the condition occurs.

   This financial transaction in the present case almost parallels Restatement (Second) of Contracts, supra at § 320, comment b. illustration 4:

   A has a contract with B under which certain payments are to be made to A by B under a fixed schedule and other payments are to be made if B's earnings exceed stated amounts. As security for a loan to A by C, A assigns to C A's rights to payments by B, A to retain any payments falling due before default by A under the loan agreement. The assignment is effective according to its terms.

likewise undeniable that Charter never consented to the sale. Consequently, when the facts are viewed most favorably to the plaintiff (Charter), a prima facie case of assignment of conditional rights was made out which at the very least should have survived a W.R.C.P. 41(b)(1) motion.

I also disagree with the majority in its passing reference to the $17,000 where interjected to be contended advance prepayment of rent to defeat collateral security of a lender in rent receipts. Again, when the evidence is viewed most favorably to the plaintiff (Charter), the characterization does not necessarily follow, and specifically, the evidence in this record does not bear out that description. No specific amount of money was solicited for the prepayment, and Brec Cooke had no recall if there even was a verbal agreement involving the prepayment of rent. Additionally, Brec Cooke had no idea how the prepayment would be credited to the rent obligation, and he had generously helped his father and mother individually out of fiscal difficulties previously. Thus, with all reasonable and proper inferences afforded Charter, this initial record provides a prima facie case showing a significant impairment of Charter's rights under the assignment.

Appropriately considering the relationships of the parties with evidence of assignment established to be followed by the manipulative impairment of the rights of the holder of the collateral, I would find at least a prima facie case presented by Charter so that it was an abuse of discretion by the district court to grant the dismissal. See *Shook*, 599 P.2d at 1322 and *Arbenz v. Bebout*, 444 P.2d 317 (Wyo.1968). In reality, these parties were playing fast and loose with the concept of a corporation's liability veil, resulting in a complete evisceration of the security that was lawfully assigned to Charter. Such a practice which significantly impairs an assignee's rights is neither desirable nor just in our law and modern times, and I cannot condone this conduct. The case was not factually developed in any regard sufficient to justify the preclusive judgment granted *to the borrowers and their successors.*

I would reverse and remand for a trial on the merits.